IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01222-EWN-KLM

JOSE MEDINA ESCOBAR,

      Plaintiff,

v.

L. REID,
K. COOPER,
E. CELLA,
T. HAUCKS,
E. PERRY,
D. GALLAGHER,
SGT. BINDER,
C/O VALDEZ,
J. BROWN,
J. SIMS,
E. DICLUSION,
E. MORA,
A. LUNA,
R. WENCL,
J. WERMERS,
R. OLIVETT,
C/O JACKSON,
L. MONTOYA,
C/O BALL,
JOHN DOW,
LT. PAULINO,
C/O RAYMOND,
C/O SANTOS,
SGT. D. SMITH,
C/O WILLIAMS,
CAPTAIN MIKLICH,
LT. MATHEWS,
SGT. OATES,
C/O COLTON,
C/O HAMULA,

C/O WOOLFOLK,
DR. CRANEY and
NURSE RITA

     Defendant(s).
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Plaintiff's **Motion for Temporary Restraining Order and/or Preliminary Injunction** [Docket No. 91; filed November 16, 2007] ("First Motion for Preliminary Injunction") and **Motion to Compel** [Docket No. 93; filed November 23, 2007] ("Second Motion for Preliminary Injunction").[1] An evidentiary hearing concerning the allegations raised in the Motions was held on January 14, 2008.

     The Court must construe the Motions liberally because Plaintiff is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate. *See Hall*, 935 F.2d at 1110. The Court has reviewed the Motions, Defendants' Response [Docket No. 128; filed January 8, 2008], the arguments presented at the hearing

---

[1] As an initial matter, I note that Plaintiff has titled his second motion a "Motion to Compel". However, having reviewed the Motion to Compel and its attachments, the Court finds that this Motion contains allegations related to Plaintiff's Motion for Preliminary Injunction [Docket No. 91] and requests substantially similar relief. As such, the Court has construed the "Motion to Compel" [Docket No. 93] as a Second Motion for Preliminary Injunction and considers the allegations contained therein under the same legal standards as the allegations contained in Plaintiff's First Motion for Preliminary Injunction.

2

held on January 14, 2008, the exhibits submitted by Plaintiff in support of his Motions[2] [Docket No. 131; filed January 22, 2008 and Docket No. 132; filed January 22, 2008], the case file, and applicable case law and is sufficiently advised in the premises. For the reasons provided below, I respectfully recommend that the Motions [Docket No. 91 and Docket No. 93] be **DENIED**.

I.    **Background**

This is a *pro se* prisoner civil rights case brought pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983, in which Plaintiff generally alleges that various Colorado Department of Corrections ("CDOC") officials have assaulted him and failed to protect him from other inmates in violation of his constitutional rights. Plaintiff is currently incarcerated at the Colorado State Penitentiary ("CSP") in Canon City, Colorado.

In his First Motion for Preliminary Injunction [Docket No. 91], Plaintiff contends that he "has been severely beaten, injured, tortured, subjected to severe infliction of physical, mental and psychological pain and suffering by DOC/CSP officials each and every time he attempts to access the courts . . . ." *First Motion for Preliminary Injunction*, p. 2. Plaintiff further contends that Defendant Mathews transferred him from a "safe" unit to unit "E3" where Plaintiff's inmate enemies also are housed, and that these enemies "have a contract

---

[2] At the January 14, 2008 hearing, I ordered the Defendants to file their objections to Plaintiff's proposed exhibits within ten days of receipt of such exhibits. Plaintiff filed his exhibits in support of his Motion for Preliminary Injunction on January 22, 2008 [Docket No. 131 and 132]. Defendants failed to file any objections to Plaintiff's exhibits within the ten-day time period provided by the Court. Accordingly, the Court has admitted Plaintiff's exhibits in their entirety and has considered them in ruling on his Motions.

on [Plaintiff's] life" and continuously threaten him. *Id.* at 2-3. Plaintiff also alleges that the prison officials in unit E3 verbally degrade him as well as deprive him of food, water, sleep and medication. *Id.* at 3. He finally alleges that his mail, both legal and otherwise, has been destroyed, read, confiscated or denied to him. *Id.* In his Second Motion for Preliminary Injunction [Docket No. 93], Plaintiff again asserts that various prison officials have threatened him, confined him with his inmate enemies, confiscated his property and legal mail and deprived him of food.

Plaintiff appears to request general injunctive relief, including that "CSP administration stop/refrain from destroying/confiscating Plaintiffs [sic] personal/legal materials, threats to assault/injure him by the Defendants and/or their relatives and co-workers, food deprivation, etc." *Second Motion for Preliminary Injunction*, p. 4. However, Plaintiff's testimony at the January 14, 2008 hearing illuminated Plaintiff's true request for the Court. Defendants' counsel asked Plaintiff, "It is my understanding that if the Court grants the relief that you seek that you would be transferred from CSP?" *Transcript of January 14, 2008 Hearing*, at p. 69; 19-20. Plaintiff replied, "Right." *Id.* at 21. Plaintiff next agreed that the relief he was requesting was to be transferred from CSP to a correctional facility in the State of Washington. *Id.* at 22-24. Plaintiff explained, "[T]he State of Washington is a neutral state, and it's a very progressive state. They also have a protective – big protective custody program there in case I was to get in trouble there or have some problems with previous inmate problems, I would have a place to go. I would have a place to do my time." *Id.* at p. 70; 8-13. Accordingly, this Court has construed

4

Plaintiff's Motions as also requesting that CDOC transfer him to the prison system in the State of Washington.

At the January 14, 2008 hearing, Defendants presented no evidence to contradict Plaintiff's allegations. Defendants' sole argument presented upon briefing is that Plaintiff cannot "show either a substantial likelihood that he will eventually prevail on the merits or that he will suffer irreparable injury unless the injunction issues." *Response*, p. 6.

## II.  Motion for Preliminary Injunction

Fed. R. Civ. P. 65(a) and (b) governs preliminary injunctions and temporary restraining orders. "Where the opposing party has notice, the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction." *Emmis Comm'ns Corp. v. Media Strategies, Inc.*, 2001 WL 111229, *2 (D.Colo. 2001) (citing 11A Charles Alan Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2951 (2d ed.1995)). While Plaintiff states that he seeks both a temporary restraining order and a preliminary injunction, because he gave notice to Defendants and a hearing was held, the Court analyzes his motion under the standards for a preliminary injunction. Fed. R. Civ. P. 65(a)(1).

### A.  Standard for Issuance of a Preliminary Injunction

A preliminary injunction is an extraordinary remedy that should only be granted when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, a party

requesting a preliminary injunction must clearly establish that: (1) there is a substantial likelihood of success on the merits of his claims; (2) the party will suffer irreparable injury unless the injunction issues; (3) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest. *Id.* In typical cases, if the plaintiff "can establish that the latter three requirements tip strongly in his favor, the test is modified, and the plaintiff may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1255-56 (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

However, there are three types of disfavored injunctions where the modified test does not apply. That is, "[b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, we have identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits." *Schrier*, 427 F.3d at 1258-59 (internal quotation marks and citations omitted). These disfavored injunctions are "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1259. Movants who seek

a disfavored injunction "are not entitled to rely on the modified likelihood-of-success-on-the-merits standard." *Id.* at 1261. "Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms . . . ." *Id.* Finally, injunctions are only issued "to prevent existing or presently threatened injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931).

Additionally, I must consider well-established law to the effect that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454 (1989); *Meachum v. Fano*, 427 U.S. 215 (1976). Courts should grant preliminary injunctive relief involving the management of prisons only under exceptional and compelling circumstances. *See Taylor v. Freeman,* 34 F.3d 266, 270 (4th Cir.1994). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (quoting *Townsend v. Sain*, 372 U.S. 293 (1963)). As such, intervention "in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts . . . This is especially true where mandatory injunctive relief

is sought and only preliminary findings as to the plaintiff's likelihood of success on the merits have been made." *Taylor,* 34 F.3d at 269 (citations omitted).

B. **Analysis of Preliminary Injunction Sought by Plaintiff**

Plaintiff requests that the Court enjoin CDOC officials from threatening him, assaulting him, depriving him of food, and confining him with his enemies, and that the Court order CDOC to transfer him to the prison system in the State of Washington. The relief requested by Plaintiff necessarily subjects his Motions to careful scrutiny because he seeks all three types of relief which are disfavored pursuant to clearly-established law. Plaintiff not only seeks to alter the status quo and to obtain all of the relief that he could recover at a trial on the merits except money damages, he also seeks mandatory injunctions. A preliminary injunction is classified as mandatory if the relief "affirmatively requires the nonmovant to act in a particular way, and as a result . . . places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 979 (10th Cir. 2004) (internal quotation marks and citations omitted). For these reasons, the injunctive relief sought by Plaintiff "constitutes a specially disfavored injunction" that "must be more closely scrutinized." *Schrier*, 427 F.3d at 1259, 1261. Plaintiff must "make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms . . . ." *Id.*

1. **Substantial Likelihood of Success on the Merits**

8

First, Plaintiff must make a strong showing that he has a substantial likelihood of success on the merits of his claim. *Schrier*, 427 F.3d at 1258. Plaintiff's motions for injunctive relief are based on his claim that his Eighth Amendment rights have been violated. Plaintiff alleges, *inter alia*, that CDOC officials have failed to protect him from other inmates and from the guards themselves in violation of his Eighth Amendment right to be free from cruel and unusual punishment. *Complaint* [Docket No. 3], pgs 19-27. To succeed on an Eighth Amendment claim, a plaintiff must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

The United States Constitution does not mandate comfortable prisons, and conditions of confinement for a prisoner may be both restrictive and harsh without being found unconstitutional. *See Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981). As such, the routine discomfort inherent to the prison environment is inadequate to satisfy the objective component of an Eighth Amendment claim. While prison officials are charged with the duty to protect prisoners from violence at the hands of other prisoners (and presumably other prison officials), not every harm suffered by an inmate translates into constitutional liability of the corrections officers responsible for the prisoner's safety. *See Farmer v. Brennan,* 511 U.S. 825, 833-34 (1994).

In order for Plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm (the objective

9

component), and that the defendants acted with "deliberate indifference" to that danger (the subjective component). *Id.; Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). Further, "[m]ere negligence does not constitute deliberate indifference; deliberate indifference is equivalent to recklessness in this context." *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006). A plaintiff can show deliberate indifference by demonstrating that the prison official was aware of an obvious, substantial risk to a prisoner's safety even if the official "did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843. For example, "an Eighth Amendment claim could be made out on evidence showing that officials transferred a protective custody inmate to a facility knowing that the inmate could not be protected there." *Chavez v. Perry*, 142 Fed. Appx. 325, 333 (10th Cir. July 13, 2005).

While Plaintiff's Motions for Preliminary Injunction contain many allegations that almost certainly do not rise to the level of a constitutional violation, such as the interception of his newspaper subscription and the shortening of his shower time, Plaintiff also alleges that he is "kept in a hostile environment and unit officials contribute to this hostility . . . ." *First Motion for Preliminary Injunction*, p. 2. He alleges that prison officials have moved him to unit "E-3" where several members of the prison gang "G.K.I." are housed and that this gang "has a contract on [Plaintiff's] life." *Id.* at 2-3. Plaintiff alleges that prison officials are aware that Plaintiff has inmate enemies, as a result of a settlement

that was negotiated in a previous lawsuit,[3] wherein Plaintiff was promised an out-of-state transfer and protection from his inmate enemies. *Id.* at 1. Plaintiff alleges that he "live[s] in the midst of [his] inmate enemies . . . . When you place a prisoner in a situation with affiliates of the prison gang leader that he killed, he's going to have problems, and he's [sic] been housed and confined in this midst of these enemies for the last fourteen years." *Transcript of January 14, 2008 Hearing*, at p. 26; 9-14. Plaintiff further contends that when he is moved outside of administrative segregation, where he currently resides, he is placed with enemies who have allegedly assaulted him fifteen times. *Id.* at p. 36; 18. Finally, Plaintiff makes numerous allegations regarding threats and wrongs committed by prison officials.

In this case, the allegations of the Complaint are very serious. However, at this stage of the proceedings, they are nothing more than allegations. After considering the extensive testimony and documentation submitted by Plaintiff, and even in light of the lack of evidence or argument offered by Defendants, I must find that Plaintiff has failed to show a substantial likelihood of succeeding on the merits of his Eighth Amendment claim.

Plaintiff testified at the hearing that he is incarcerated in a single cell, and that there are no double cells in the facility in which he is incarcerated. *Transcript of January 14, 2008 Hearing*, at p. 71; 3-5. Plaintiff further testified that whenever he leaves his cell he is escorted by two prison guards. *Id.* at p. 70-71; 24-25, 1. Further, the majority of the

---

[3]Civil Case No. 90-cv-00018-RPM, United States District Court for the District of Colorado.

exhibits submitted by Plaintiff himself illustrate that prison officials have investigated his allegations of abuse by staff or other prisoners and have found them to be meritless. *See, e.g.,* Grievance Form dated November 13, 2006 [Docket No. 131-2; filed January 22, 2008] at p. 17 ("I have reviewed your grievance stating that you are being subjected to physical, mental, and psychological harm . . .. I have observed the staff personally and through the camera system. I did not observe any infliction of pain, inappropriate behavior, or any other of your claims . . .There is no evidence to support your allegations"); Grievance Form dated January 7, 2007 [Docket No. 131-2; filed January 22, 2008] at p. 18 ("I find no evidence to support your claims of psychological or physical abuse"); Grievance Form dated February 7, 2007 [Docket No. 132-2; filed January 22, 2008] at p. 23 ("I have not found any indication these activities have occurred . . . I have found no proof to any of the above allegations and your request that they refrain from any further deprivations of your Constitutional protected rights is not needed, as they do not exist"); Grievance Form dated May 30, 2007 [Docket No. 132-2; filed January 22, 2008] at p. 25 ("[Y]ou consistently fail to provide specifics. There are no dates, no times, nothing to corroborate your claims"); Grievance Form dated July 19, 2007 [Docket No. 132-2; filed January 22, 2008] at p. 26 (You . . . provide no credible evidence or substantiated documentation that any of these allegations [of excessive force] ever occurred. Without specific times or dates, there is no way to corroborate your claims"); Letter dated July 14, 1999 [Docket No. 132-2; filed January 22, 2008] at p. 33 ("During the time an inmate is involved in litigation, he receives no varying treatment based on the existing litigation. That is, neither special privileges or

harassing behavior will be tolerated based on an inmate's engaging in litigation . . . .Should you have specific date and time of events, independently verifiable, that you are being harassed due to this litigation, such would be welcome information"). Based on Plaintiff's own evidence, he has not made the requisite showing that he is reasonably likely to succeed on the merits in this case. *See, e.g., Bellmon*, 935 F.2d at 1110 (holding that a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."); *Bryant v. National Football League*, 2007 WL 3054985, *2 (D.Colo. 2007) (holding that unverified, conclusory allegations will not support a motion for temporary restraining order).

Based on the record before me at this time, I find that Plaintiff is not incarcerated under conditions posing a substantial risk of serious harm and is not in immediate danger of being harmed by other inmates. Plaintiff is housed in a single cell and has extremely limited contact with other inmates. While Plaintiff has presented argument regarding alleged threats or assaults by CDOC staff, I find that there is no evidence in the record to substantiate such threats. As the circumstances under which Plaintiff is currently incarcerated do not give rise to a substantial risk of serious harm or place him in imminent danger of serious harm, I find that he is not entitled to the relief sought in his motion. Further, because Plaintiff has not made a strong showing of the likelihood of success on the merits of his claims, the Court declines to evaluate the other factors required for a preliminary injunction to issue.

Accordingly, I respectfully **RECOMMEND** that the Motions [Docket No. 91; filed

November 16, 2007] and [Docket No. 93; filed November 23, 2007] be **DENIED**.

FURTHER, IT IS **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this Recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *In re Key Energy Res. Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:
\_\_s/ Kristen L. Mix_____
United States Magistrate Judge

Dated: March 10, 2008