IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-01222-CMA-KLM

JOSE MEDINA ESCOBAR,

      Plaintiff,

v.

L.  REID,
K. COOPER,
E. CELLA,
T. HAUCKS,
E. PERRY,
D. GALLAGHER,
SGT. BINDER,
C/O VALDEZ,
J. BROWN,
J. SIMS,
E. DICLUSION,
E. MORA,
A. LUNA,
R. WENCL,
J. WERMERS,
R. OLIVETT,
C/O JACKSON,
L. MONTOYA,
C/O BALL,
LT. CONWAY,
LT. PAULINO,
C/O RAYMOND,
GONZALES,
DESANTOS,
SGT. D. SMITH,
C/O WILLIAMS,
CAPTAIN MIKLICH,
LT. MATHEWS,
C/O MARTIN,
C/O COLTON,
C/O HAMULA,

1

C/O WOOLFOLK,
DR. CRANEY, and
NURSE RITA

    Defendant(s).

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on **Defendants' Motion for Summary Judgment** [Docket No. 176; Filed October 2, 2008 and Docket No. 177; Filed October 2, 2008] (collectively, the "First Motion for Summary Judgment"), **Defendants' Combined Motion for Summary Judgment and Brief** [Docket No. 178; Filed October 2, 2008] (the "Second Motion for Summary Judgment") and **Defendant's Motion for Judgment on the Pleadings** [sic] **Dismissal of the Supplemental Complaint** [Docket No. 179; Filed October 2, 2008] (the "Motion for Judgment on the Pleadings"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO.L.Civ.R. 72.1.C., the matters have been referred to this Court for recommendation. The Court has reviewed the Motions, Plaintiff's Response [Docket No. 185; Filed October 20, 2008], the entire case file, and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that:

    (1) **Defendants' Motion for Summary Judgment** [Docket No. 176; Filed October 2, 2008] be **GRANTED IN PART AND DENIED IN PART**.

    (2) **Defendants' Combined Motion for Summary Judgment and Brief** [Docket

No. 178; Filed October 2, 2008] be **DENIED**.

(3) **Defendant's Motion for Judgment on the Pleadings** [sic] **Dismissal of the Supplemental Complaint** [Docket No. 179; Filed October 2, 2008] be **GRANTED**.

**TABLE OF CONTENTS**

I.  Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

II. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
    A.  Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 . . . . .  12
    B.  Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)  13

III. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
    A.  First Motion for Summary Judgment  . . . . . . . . . . . . . . . . . . . . . . . .  15
        1.  Failure to Exhaust Administrative Remedies . . . . . . . . . . . . . .  15
        2.  Statute of Limitations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17
            a.  First Claim for Relief  . . . . . . . . . . . . . . . . . . . . . . . .  19
            b.  Second Claim for Relief . . . . . . . . . . . . . . . . . . . . . . .  23
            c.  Third Claim for Relief . . . . . . . . . . . . . . . . . . . . . . . . .  24
            d.  Fourth Claim for Relief . . . . . . . . . . . . . . . . . . . . . . . .  25
        3.  Personal Participation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25
            a.  Defendant Reid  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27
            b.  Defendants Luna, Martin, Craney and Nurse Rita . . . . . .  29
        4.  Qualified Immunity  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31
            a.  First Claim for Relief - Excessive Force . . . . . . . . . . . . .  32
                i.   Defendants Brown, Sims and Diclusion  . . . . . . . .  33
                ii.  Defendants Mora and Olivett  . . . . . . . . . . . . . . .  36
            b.  Second Claim for Relief - Deliberate Indifference . . . . . .  41
                i.   Defendant Wencl . . . . . . . . . . . . . . . . . . . . . . . .  42
                ii.  Defendant Wermers . . . . . . . . . . . . . . . . . . . . . .  43
            c.  Fourth Claim for Relief - Due Process Violations . . . . . . .  45
                i.   Procedural Due Process . . . . . . . . . . . . . . . . . . .  46
                ii.  First Amendment - Retaliation . . . . . . . . . . . . . . .  51
            d.  Seventh Claim for Relief - Excessive Force Claims . . . . .  54
                i.   Defendants Mathews, Hamula and Colton  . . . . . .  56
                ii.  Defendants Miklich and Woolfolk  . . . . . . . . . . . . .  57
    B.  Second Motion for Summary Judgment  . . . . . . . . . . . . . . . . . . . . . .  59
        1.  Failure to Exhaust Administrative Remedies . . . . . . . . . . . . . .  60
        2.  Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  61
            a.  Defendant Raymond . . . . . . . . . . . . . . . . . . . . . . . . .  62

b.     Defendant Gonzales . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
C.    Motion for Judgment on the Pleadings . . . . . . . . . . . . . . . . . . . . . . . . 63
1.    First Amendment Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64
2.    Eighth Amendment Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

IV.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

## I.    Statement of the Case

As a preliminary matter, the Court notes that Defendants have failed to abide by Local Rule of Practice D.C.COLO.LCivR. 56.1(A), which requires that "[a] motion under Fed. R. Civ. P. 56 shall include a statement of undisputed facts and be supported by argument and a recitation of legal authority incorporated into the motion in lieu of a separate opening brief." In complete disregard of this rule, Defendants' Motions for Summary Judgment do not contain statements of undisputed facts. Therefore, as a result of this omission, the Court will accept the facts as set forth in Plaintiff's Complaint as undisputed, except to the extent that it can determine the existence of a genuine dispute.[1]

At the time of filing, Plaintiff was incarcerated at the Colorado State Penitentiary ("CSP") by the Colorado Department of Corrections ("CDOC"). On June 27, 2006, Plaintiff filed his *pro se* Complaint pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983 [Docket No. 3; Filed June 27, 2006]. Plaintiff filed Supplements to his Complaint on July 10, 2006 and July 11, 2006 [Docket No. 8 and No. 9]. On September 22, 2006, Senior District Judge

---

[1]The Court further notes that Defendants have failed to abide by District Judge Christine M. Arguello's Practice Standards, which both forbid multiple motions for summary judgment without Court permission and require a Statement of Undisputed Facts in such motions. *See* Practice Standards at V.B.1. and 3. Because the case was reassigned to Judge Arguello after Defendants' Motions for Summary Judgment were filed [#187], the Court elects to rule on the substance of the Motions instead of striking them, as permitted by the District Judge's Practice Standards. *See* Practice Standards at II.A.2.

Weinshienk dismissed Plaintiff's Complaint on the grounds that Plaintiff had failed to demonstrate that he had exhausted his administrative remedies [Docket No. 16].

Plaintiff appealed this dismissal to the Tenth Circuit Court of Appeals, and on July 11, 2007, the Tenth Circuit reversed the decision and remanded Plaintiff's case to this Court. The Tenth Circuit noted that, at the time of its decision, the district court "properly relied on *Steele* and *Ross* to dismiss [Plaintiff's] complaint for failure to plead and demonstrate administrative remedies." *Mandate* [#28] at 7. However, the Tenth Circuit found that the recent Supreme Court case, *Jones v. Bock*, 549 U.S. 199 (2007), rejected *Steele* and *Ross* "by holding that failure to exhaust is an affirmative defense relieving prisoners from pleading and demonstrating exhaustion and eliminating the total exhaustion rule." *Id.* The Tenth Circuit concluded that it was unclear from the record whether the alleged defects in Plaintiff's exhaustion efforts had been "produced from the action or inaction of prison officials," and therefore, that the district court had been incorrect to dismiss Plaintiff's Complaint for failure to exhaust without first examining these circumstances. *Id.* at 8. Accordingly, by Order dated July 19, 2007, Plaintiff's case was reinstated in this Court [Docket No. 30]. Subsequently, on July 26, 2007, Plaintiff filed a third supplement to his Complaint [Docket No. 33], which was accepted for filing by the Court on October 29, 2007 [Docket No. 78].

Plaintiff's original Complaint asserts four claims for relief. In Plaintiff's First Claim for Relief, he alleges that on October 16, 2003, Defendants Haucks and Perry escorted him to the shower. *Complaint* [#3] at 8. While in the shower, Plaintiff alleges that Defendant

Haucks punched Plaintiff in the left eye, shoved Plaintiff into the shower wall, and then put Plaintiff into a "reverse head lock," smashing Plaintiff's head into the shower floor, which "open[ed] a large gash along [Plaintiff's] left eye brow, knocking him unconscious . . . ." *Id.* at 9. Plaintiff alleges that when he regained consciousness, he was lying in a large pool of blood and that Defendant Haucks "was jumping up and down on the Plaintiff's back rendering him unconscious again." *Id.* Plaintiff contends that Defendants Perry, Cella and Cooper were aware that the assault was going to take place, but took no action to protect Plaintiff from the assault. *Id.* at 19. Plaintiff also contends that on October 16, 2003, while receiving medical treatment after the assault, Defendant Gallagher "got on top of Plaintiff and began punching him in the mouth while [Defendant] Nurse Montoya . . . kept watch." *Id.* at 9. Plaintiff further alleges that Defendants Cella, Haucks and Jackson contaminated his meals by spitting in them such that Plaintiff was unable to eat them. *Id.* at 20. Next, Plaintiff alleges that on November 21, 2003, Defendants Binder and Valdez punched Plaintiff in his left eye and left rib. *Id.* Plaintiff also alleges that on January 27, 2004, Plaintiff was transferred to "E-Unit" where Defendants Brown, Sims and Diclusion threatened Plaintiff with death, punched, kicked and spit on Plaintiff, tainted his meals, and generally engaged in severe physical and mental harassment of Plaintiff. *Id.* at 21.

Next, Plaintiff alleges that on July 20, 2004, he was transferred to "C-Unit" where Defendants Mora and Olivett verbally harassed Plaintiff, contaminated his meals, and sexually molested him. *Id.* at 22. Plaintiff alleges that during this time he lost approximately thirty pounds due to Defendants' refusal to feed him uncontaminated food.

*Id.* Finally, Plaintiff alleges that Defendant Reid, Warden of CSP, had an obligation to protect Plaintiff from harm and failed to fulfill this obligation. *Id.* at 22-23. Plaintiff alleges that these actions by Defendants in either subjecting him to harm or failing to protect him from harm violated his Eighth Amendment right to be free from cruel and unusual punishment.

In Plaintiff's Second Claim for Relief, he generally alleges that he requested, and was not provided, medical attention for injuries from the October 16, 2003 assault. *Id.* at 24. Plaintiff alleges that Defendant Wencl refused to provide any pain medication or treatment for Plaintiff's injuries and also confiscated Plaintiff's "medical pillow." *Id.* Finally, Plaintiff alleges that on October 19, 2004, Defendant Wermers "came to Plaintiff's cell in regards to his thyroid and Plaintiff was unable to get up from bed, his legs and feet were severely swollen and neck and back pain was severe." *Id.* at 25. Plaintiff alleges that Defendant Wermers left Plaintiff's cell without providing him medical care, and then charged him five dollars. *Id.* Plaintiff contends that the actions taken by Defendants Wencl and Wermers violated his Eighth Amendment right to be free from cruel and unusual punishment via deliberate indifference to his serious medical needs. *Id.*

In Plaintiff's Third Claim for Relief, he alleges that Defendants Cooper, Cella, Haucks and Perry were aware of previous lawsuits and/or prison grievances that Plaintiff had filed against them and engaged in retaliation against Plaintiff for his legal activities. *Id.* at 26. Plaintiff contends that the October 16, 2003 assault was carried out by Defendant Haucks and Perry in retaliation for Plaintiff's legal activities, and that Defendant Cooper and Cella

were aware of the likelihood of an assault on Plaintiff, but facilitated the assault in order to retaliate against Plaintiff. *Id.* Finally, Plaintiff contends that Defendant Reid was aware that prison staff were intending to retaliate against Plaintiff, or had retaliated against Plaintiff, but Defendant Reid also retaliated against Plaintiff for his grievances and/or legal activities by failing to protect Plaintiff from the October 16, 2003 assault. *Id.* at 26-27.

In his Fourth Claim for Relief, Plaintiff alleges that as a result of and in connection with the October 16, 2003 assault, Defendants Haucks and Perry filed false disciplinary charges against him. *Id.* at 28. Second, Plaintiff contends that Defendant Cooper served as the hearing officer on the allegedly false disciplinary charges, and Defendant Cooper refused to step down as hearing officer even though she was biased against Plaintiff and had allowed or encouraged the October 16, 2003 assault in retaliation against Plaintiff for his legal activities. *Id.* Plaintiff alleges that these actions by Defendants violated his Fourteenth Amendment rights to receive procedural and substantive due process during his prison hearing. *Id.*

Plaintiff filed a First Supplemental Complaint on July 11, 2006 [Docket No. 8]. The Court will refer to the allegations contained in Plaintiff's First Supplemental Complaint as his Fifth Claim for Relief. In Plaintiff's Fifth Claim for Relief, he alleges that on June 18, 2006, Defendant Desantos[2] came to Plaintiff's cell to collect his legal mail. *Fifth Claim for*

_____

[2]In Plaintiff's Fifth Claim for Relief, he refers to this Defendant as "Officer Santos." However, on September 10, 2007, Plaintiff informed the Court that this Defendant was instead correctly identified as Defendant Desantos [Docket No. 56] and the case caption was corrected accordingly [Docket No. 78]. Also in his "Motion for Correction of Named Defendants" filed on September 10, 2007, Plaintiff identified one of the "John Does" listed in his Fifth Claim for Relief as Lt. Conway [Docket No. 56]. Plaintiff stated that Lt. Conway was "the shift commander in

*Relief* [#8] at 1.  Plaintiff contends that Defendant Desantos would not "log-in" Plaintiff's legal mail, and instead, "threw both envelopes down on the tier, close[d] Plaintiff's door tray slot and walked away."  *Id.*  Next, Plaintiff alleges that Defendant Raymond yelled racial slurs at Plaintiff, informed him that he had lost his legal mail, and denied Plaintiff's request to see a supervisor.  *Id.* at 1-2.  Plaintiff states that approximately ten minutes later, non-party Lt. Pryor came to Plaintiff's cell and properly received Plaintiff's legal mail so that it could be taken to the mail room.  *Id.* at 2.  However, Plaintiff alleges that later on June 16, 2006, he was charged with "assault charges" by Defendant Desantos for the incident that occurred involving Plaintiff's legal mail.  *Id.*  Due to these charges, Plaintiff contends that on the night of June 16, 2006, he was transferred from CSP to the Centennial Correctional Facility ("CCF") for code of penal discipline ("COPD") violations, stripped naked, placed in restraints and then confined in a cell with no running water other than a toilet.  *Id.*

Next, Plaintiff alleges that at 1:30 a.m. on the morning of June 17, 2006, he began having "severe chest pains, hot sweats, cold chills, numbness of his left shoulder, neck and left side of his face."  *Id.*  Plaintiff alleges that he informed the prison officials, at which time they told him medical staff would be notified, and refused him water.  *Id.*  Plaintiff alleges that he experienced another chest pain at 3:00 a.m.  and that he informed staff he believed he was having a heart attack and was again refused water.  *Id.* at 2-3.  At that time, he also alleges that Defendant Paulino informed him that there were no vehicles available to

---

charge of Plaintiff on June 18th or 19th 2006 when Plaintiff in 'special controls' had a heart attack."  *Motion for Correction of Named Defendants* [#56] at 1.

transfer Plaintiff to a medical facility and so Plaintiff was "shit out of luck," and would have to wait for medical staff to come to CCF. *Id.* at 3. Plaintiff alleges that his restraints were removed at 6:00 a.m. on the morning of June 17, 2006, and that he was taken to see a nurse practitioner who immediately transferred him to a hospital by ambulance where several tests were administered to Plaintiff. *Id.*

Plaintiff alleges that Defendants Desantos and Raymond denied him legal access to the Court and also retaliated against him for prior legal activity in apparent violation of his First Amendment rights. *Id.* Plaintiff further alleges that Defendants Paulino, Conway, Desantos, Raymond, D. Smith, Williams and Ball were responsible for transferring Plaintiff to a medical facility, but failed to do so even once they were aware of his serious medical needs, in violation of his Eighth Amendment rights. *Id.* at 3-4.

Plaintiff filed a Second Supplemental Complaint on July 11, 2006 [Docket No. 9]. The Court will refer to the allegations contained in Plaintiff's Second Supplemental Complaint as his Sixth Claim for Relief. In Plaintiff's Sixth Claim for Relief, he alleges that on July 2, 2006, while Defendant Raymond escorted Plaintiff to the shower, Defendant Raymond "with a closed fist battered Plaintiff's right side with excessive force." *Sixth Claim for Relief* [#9] at 2. Plaintiff further alleges that from November 13, 2005 to January 18, 2006, Plaintiff was assaulted on a daily basis by Defendant Gonzales. *Id.* at 2-3. Plaintiff alleges that these actions were taken by Defendants in violation of his Eighth Amendment right to be free from cruel and unusual punishment. *Id.*

Plaintiff filed a Third Supplemental Complaint on July 26, 2007 [Docket No. 33]. The

Court will refer to the allegations contained in Plaintiff's Second Supplemental Complaint as his Seventh Claim for Relief. In Plaintiff's Seventh Claim for Relief, he alleges that on May 10, 2007, Defendants Mathews, Hamula, and Colton came to Plaintiff's cell to handcuff him and escort him to "special controls strip cell" for allegedly threatening staff members. *Seventh Claim for Relief* [#33] at 2. At that time, Plaintiff requested that Defendant Miklich be made available, and Micklich was brought to participate in Plaintiff's removal from his cell. *Id.* Plaintiff alleges that after he was handcuffed, Defendant Hamula placed a spit mask over his face, and Plaintiff was then roughly escorted to a secluded strip search area. *Id.* at 2-3. Plaintiff states that while Defendant Woolfolk was filming the entire incident, Defendants Mathews, Hamula and Colton stripped Plaintiff naked and placed him into restraints. *Id.* at 3. Plaintiff alleges that the spit mask made it very difficult for him to clear his throat and breathe. *Id.* Next, Plaintiff alleges that Defendants Hamula and Colton "slammed [him] to the floor very unexpectedly causing him severe excruciating pain to his hip-lower back and began applying pressure to his wrists to the point of breaking them and pushing thumb/knuckle under [Plaintiff's] left ear lobe with great force while he was completely subdued with Hamula and Colton on each side inflicting the worst excruciating pain [Plaintiff] has ever experienced in all his life . . . ." *Id.* Plaintiff further alleges that this physical pain was inflicted on him by Defendants for over two hours, and that Plaintiff had offered no provocation to prison officials before they began to assault him. *Id.* Plaintiff further alleges that Defendant Mathews orchestrated the assault and laughed at Plaintiff's

pain during the course of the assault. *Id.*[3]  After the assault, Plaintiff states that he could

not stand or walk, that the pain in his back was unbearable, he could not turn his neck, and

both his wrists were severely numb and swollen.  *Id.* at 3-4.  Plaintiff alleges that the

actions by Defendants violated his Eighth Amendment right to be free from cruel and

unusual punishment.

Plaintiff requests compensatory and punitive damages, in addition to injunctive

relief.  *Complaint* [#3] at 34-35.

## II.    Standard of Review

### A.    Motion for Summary Judgment Pursuant to Fed.  R.  Civ.  P.  56

In ruling on a motion for summary judgment, the facts must be viewed in the light

most favorable to the party opposing the motion, and that party must be afforded the

benefit of all reasonable inferences to be drawn from the evidence.  *Adickes v. S. H. Kress*

*& Co.*, 398 U.S. 144, 157 (1970).  Fed. R. Civ. P. 56(c) provides that summary judgment

may be granted if the "pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."  A

genuine issue of material fact exists "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).

---

[3] On June 2, 2008, Plaintiff stated that the Defendant identified as "Sgt. Oates" in Plaintiff's Seventh Claim for Relief was actually "Sgt. Martin," and on October 17, 2008, the Court directed that the caption be corrected to change Sgt. Oates to Sgt. Martin [Docket No. 184].

When the movant has the burden of proof on a claim for which he seeks judgment, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). When making a motion for summary judgment, a party with the burden of proof may not simply rest on assertions contained within his pleadings, but must come forward by adducing specific facts supporting the claim. *Banc Oklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999). The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

The moving party bears the initial burden of demonstrating, by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. *Id.* at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

**B.      Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)**

A motion for judgment on the pleadings brought pursuant to Fed. R. Civ. P. 12(c) is reviewed under a similar standard as a motion brought pursuant to Fed. R. Civ. P. 12(b)(6). Therefore, in ruling on a motion for judgment on the pleadings, courts should look to the specific allegations of the complaint to determine whether they plausibly support a legal

claim for relief, that is, a complaint must include "enough facts to state a claim for relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.,* 493 F.3d 1225, 1236 (10th Cir. 2007); *Alvarado v. KOB-TV, LLC,* 493 F.3d 1210, 1215 (10th Cir. 2007). The Court accepts as true the well-pled factual allegations of the opposing party and draws all reasonable inferences in his favor. *Qwest Comm'ns. Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002). "Uncontested allegations to which the other party had an opportunity to respond are taken as true." *Id.*.

Further, "[j]udgment on the pleadings should not be granted 'unless the moving party clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006) (citation omitted); *Qwest*, 208 F.R.D. at 291 (holding that judgment on the pleadings is appropriate where the Answer fails to raise issues of fact or affirmative defenses "which, if proved, would defeat plaintiff's recovery"). In ruling on a motion for judgment on the pleadings, the Court may consider the Complaint, any material that is attached to the Complaint, and the Answer. *See Park Univ.*, 442 F.3d at 1244; *Qwest*, 208 F.R.D. at 291. The allegations in Plaintiff's Complaint "must be taken as true to the extent they are uncontroverted by [Defendants'] affidavits." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). In addition, only well-pled facts, as opposed to mere conclusory allegations, must be accepted as true. *Id.*

Finally, because Plaintiff here is proceeding *pro se*, the Court construes his pleadings liberally. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir.

2003). Even so, Plaintiff still retains "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This burden remains because a "*pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.*

## III.    Analysis

This action is brought pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or other proper proceeding for redress.

### A.    First Motion for Summary Judgment

Defendants move for summary judgment on Plaintiff's First, Second, Third, Fourth and Seventh Claims for Relief. *First Motion for Summary Judgment* [#176] at 2. The Court will analyze Defendants' arguments in the order presented in the Motion.

### 1.    Failure to Exhaust Administrative Remedies

Defendants first contend that Plaintiff failed to exhaust his administrative remedies, arguing that Plaintiff failed to file any administrative grievances against the Defendants named in his First, Second, Third, Fourth and Seventh Claims for Relief. *First Motion for Summary Judgment* [#177] at 3, 5-6.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires that a claim regarding prison conditions must first be exhausted at the facility level before a prisoner

may challenge those conditions in federal court. Specifically, the exhaustion provision provides:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 200-01 (2007); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). However, the burden is not on the plaintiff to sufficiently plead exhaustion or attach exhibits proving exhaustion. *Jones*, 549 U.S. at 201. Instead, the burden is on Defendants to assert a failure to exhaust in their dispositive motion. The failure to exhaust defense is generally viewed as an allegation that the complaint fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), *see id.*, but the Court analyzes the issue here pursuant to Fed. R. Civ. P. 56. As such, Defendants have the burden of proof on the exhaustion issue and Defendants must establish every element of this affirmative defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e).

It is axiomatic that when bringing a motion for summary judgment, a party with the burden of proof may not simply rest on assertions contained within his pleadings, but must come forward with specific facts supporting the claim. *Banc Oklahoma Mort. Corp.*, 194 F.3d at 1097. The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits. *Adler*, 144 F.3d at 671. However, in apparent disregard of their burden to properly support both their motion for summary judgment and their argument that Plaintiff

failed to exhaust his administrative remedies, Defendants have failed to attach any affidavits or deposition transcripts to their First Motion for Summary Judgment. *See First Motion for Summary Judgment* [#177] at 1-8. Indeed, Defendants' First Motion for Summary Judgment has no exhibits nor supporting evidence whatsoever. *See id.* As such, Defendants have failed to present any evidence or specific facts supporting their affirmative defense, and instead, simply rest on the conclusory assertions contained in their pleadings, the one thing they may not do on a motion for summary judgment. *See Banc Oklahoma Mort. Corp.*, 194 F.3d at 1097. Accordingly, Defendants have not met their burden of proving Plaintiff's failure to exhaust his administrative remedies, and the Court declines to grant summary judgment on these grounds.

### 2. Statute of Limitations

Second, Defendants argue that Plaintiff's first four claims for relief are barred by the applicable Colorado statute of limitations, Colo. Rev. Stat. § 13-80-102. *First Motion for Summary Judgment* [#177] at 4.

Actions brought pursuant to 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose. *Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994). In Colorado, the limitation on a personal injury claim brought pursuant to Section 1983 is two years. *See* Colo. Rev. Stat. § 13-80-102(g) (creating a two-year limitation period for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "[a]ll other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d 749,

750 (10th Cir. 1993) (applying Colo. Rev. Stat. § 13-80-102 to a § 1983 claim). However, federal law rather than state law determines when a cause of action accrues. *See Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994). Pursuant to federal law, "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id.* at 969. That is, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) (citations omitted). Further, once a defendant satisfies his initial burden to show that a claim is untimely, the burden shifts to Plaintiff to establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date. *See Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980).

Plaintiff did not initiate his case in this Court until June 18, 2006, the date when he signed and dated his Complaint.[4] Therefore, pursuant to the two year statute of limitations set forth in Colo. Rev. Stat. § 13-80-102, any acts occurring prior to June 18, 2004 are time barred and must be dismissed by the Court unless Plaintiff establishes that the limitations period is subject to tolling. Accordingly, the Court must examine the dates alleged in Plaintiff's first four claims for relief to determine if any of the conduct falls outside the

---

[4]The mailbox rule applies to an inmate's filing of a civil rights complaint. *See Price v. Philpot*, 420 F.3d 1158, 1164 (10th Cir. 2005). Pursuant to the mailbox rule, "an inmate who places a federal civil rights complaint in the prison's internal mail system will be treated as having 'filed' that complaint on the date it is given to prison authorities for mailing to the court." *Id.* at 1165. However, the inmate must establish actual use of the prison's internal mail system in order to be provided the benefits of the mailbox rule. *Id.* The Court will assume without deciding that the mailbox rule applies to the filing date, and therefore that Plaintiff's Complaint was placed in the prison mail system on the date when he signed and dated it.

applicable statute of limitations period.

### a. First Claim for Relief

The time-line of the acts alleged in Plaintiff's First Claim for Relief is as follows: First, Plaintiff alleges that he was assaulted on October 16, 2003 by Defendant Haucks, and the assault was witnessed and/or encouraged by Defendants Perry, Cella and Cooper. *Complaint* [#3] at 8-9. Plaintiff further alleges that Defendant Gallagher assaulted him on a separate occasion on October 16, 2003, and that Defendant Montoya witnessed this assault. *Id.* at 9. In addition, Plaintiff alleges that on November 21, 2003, Defendants Binder and Valdez punched Plaintiff in his left eye and left rib. *Id.* at 20. Next, and prior to his transfer to E-Unit on January 27, 2004, Plaintiff alleges that Defendants Cella, Haucks and Jackson contaminated his meals by spitting in them. *Id.* at 20. Then, Plaintiff alleges that on January 27, 2004, he was transferred to E-Unit where Defendants Brown, Sims and Diclusion threatened Plaintiff with death, punched, kicked and spit on Plaintiff, tainted his meals, and generally engaged in severe physical and mental harassment of Plaintiff. *Id.* at 21. Finally, Plaintiff alleges that on July 20, 2004, he was transferred to C-Unit where Defendants Mora and Olivett verbally harassed Plaintiff, contaminated his meals, and sexually molested him. *Id.* at 22. Plaintiff alleges that during this time he lost approximately thirty pounds due to Defendants' refusal to feed him uncontaminated food. *Id.*

Plaintiff commenced his action on June 18, 2006, and thus, only those events occurring on or after June 18, 2004 would be timely. Accordingly, many of the above

events, by Plaintiff's own omission, occurred before June 18, 2006, and are therefore untimely and properly dismissed by the Court unless Plaintiff establishes that the statute of limitations period is subject to tolling. *See* Colo. Rev. Stat. § 13-80-102(g); *Blake*, 997 F.2d at 750.

The issue of tolling is governed by Colorado state law. *See Fratus*, 49 F.3d at 675. Colorado's equitable tolling provisions are "limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1099 (Colo. 1996). Colorado courts have held that the doctrine of tolling is "not favored," and the Colorado Supreme Court "has never found" the requisite "extraordinary circumstances" to exist such that tolling could be applied to a statute of limitations. *Olson v. State Farm Mut. Auto Ins. Co.*, 174 P.3d 849, 858 (Colo. Ct. App. 2007); *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 150 (Colo. 2007). Finally, the burden lies with Plaintiff to prove that the statute of limitations has been equitably tolled in this case. *See Roberts v. Barreras,* 484 F.3d 1236, 1241 (10th Cir. 2007).

In this case, although Plaintiff generally asserts that Defendants prevented him from exhausting his administrative remedies, he does not assert that he is entitled to tolling on the statute of limitations, nor that he was hindered from filing his Complaint until June of 2006. *See Response* [#185] at 2-3. Plaintiff does not set forth his diligent efforts to file any complaint prior to June 2006, and generally fails to make any argument that "extraordinary

circumstances" exist in his case such that the statute of limitations should be tolled. *Olson*, 174 P.3d at 858. Further, there is no evidence before the Court that Defendants wrongfully impeded Plaintiff from asserting his claims until June of 2006 or that extraordinary circumstances exist. *See Dean Witter Reynolds, Inc.*, 911 P.2d at 1099. Plaintiff has failed to meet his burden such that equitable tolling could be applied to his case, and the Court therefore finds that Plaintiff is not entitled to equitable tolling. *See Roberts,* 484 F.3d at 1241. As such, the Court finds that Plaintiff's claims against Defendants Haucks, Perry, Cella, Cooper, Gallagher, Montoya, Jackson, Binder and Valdez for the events occurring before June 18, 2004, as set forth above, are barred by the statute of limitations period and are properly dismissed by the Court. *See* Colo. Rev. Stat. § 13-80-102(g); *Blake*, 997 F.2d at 750.

However, Plaintiff's First Claim for Relief also alleges that on January 27, 2004, he was transferred to E-Unit where Defendants Brown, Sims and Diclusion threatened Plaintiff with death, punched, kicked and spit on Plaintiff, tainted his meals, and generally engaged in severe physical and mental harassment of Plaintiff. *Complaint* [#3] at 21. Second, Plaintiff alleges that on July 20, 2004, he was transferred to "C-Unit" where Defendants Mora and Olivett verbally harassed Plaintiff, contaminated his meals, and sexually molested him. *Id.* at 22. Plaintiff's statements regarding the alleged harassment by Defendants Brown, Sims and Diclusion do not allow the Court to definitively determine that all of this conduct occurred outside the statute of limitations period, because it appears that a portion of the alleged constitutional violations may have occurred between June 18, 2004, the first

date within the statute of limitations period, and July 20, 2004, the date Plaintiff was transferred to C-Unit. *See Complaint* [#3] at 21-22. Accordingly, to the extent that Plaintiff brings claims against Defendants Brown, Sims and Diclusion for alleged constitutional violations that occurred between June 18, 2004 and July 20, 2004, the Court cannot conclusively determine that this conduct is barred by the statute of limitations. Further, Defendants make no specific arguments with regard to this time period. Second, with respect to the time period after July 20, 2004 and the alleged constitutional violations committed by Defendants Mora and Olivett, the Court finds that this activity occurred after June 18, 2004, and, as such, was timely filed. Defendants again make no specific arguments with respect to this time period or these alleged constitutional violations. Therefore, the Court declines to grant summary judgment on the portion of Plaintiff's claims against Defendants Brown, Sims and Diclusion that allege constitutional violations between June 18, 2004 and July 20, 2004, and on Plaintiff's claims against Defendants Mora and Olivett that allege constitutional violations occurring after July 20, 2004.

Accordingly, I respectfully **RECOMMEND** that summary judgment be **GRANTED** on Plaintiff's First Claim for Relief in favor of Defendants Haucks, Perry, Cella, Cooper, Gallagher, Montoya, Jackson, Binder and Valdez for failure to file within the statute of limitations period. I further **RECOMMEND** that summary judgment be **DENIED** on Plaintiff's First Claim for Relief against Defendants Mora, Olivett, Brown, Sims, and Diclusion.

### b.    Second Claim for Relief

In Plaintiff's Second Claim for Relief, he generally alleges that he requested medical attention for injuries that occurred as a result of the October 16, 2003 assault and that he was not provided medical care. *Complaint* [#3] at 24. Plaintiff alleges that Defendant Wencl refused to provide any pain medication or care for Plaintiff's injuries related to the October 16, 2003 assault and also confiscated Plaintiff's "medical pillow." *Id.* Plaintiff has provided no time frame for any of his allegations related to Defendant Wencl. *Id.* Second, Plaintiff alleges that on October 19, 2004, Defendant Wermers "came to Plaintiff's cell in regards to his thyroid and Plaintiff was unable to get up from bed, his legs and feet were severely swollen and neck and back pain was severe." *Id.* at 25.

Although Defendants make the blanket assertion that the relevant statute of limitations applies to Plaintiff's Second Claim for Relief, because Plaintiff provides no dates in his Complaint, the Court cannot definitively determine the applicability of the statute of limitations period. Defendants have not satisfied their initial burden to show that Plaintiff's Second Claim for Relief is untimely, and the Court is unable to dismiss Plaintiff's claims against Defendant Wencl on these grounds. *See Aldrich*, 627 F.2d at 1041. Moreover, Plaintiff's claim against Defendant Wermers is for a constitutional violation that occurred on October 19, 2004 and therefore, this claim was timely filed. Accordingly, the Court declines to grant summary judgment on Plaintiff's Second Claim for Relief on the basis of the statute of limitations.

Accordingly, I respectfully **RECOMMEND** that summary judgment be **DENIED** on the portion of Defendants' First Motion for Summary Judgment that argues that the statute

of limitations applies to Plaintiff's Second Claim for Relief.

### c.    Third Claim for Relief

In Plaintiff's Third Claim for Relief, he alleges that Defendants Cooper, Cella, Haucks and Perry were aware of previous lawsuits and/or grievances that Plaintiff had filed against them and engaged in retaliation against Plaintiff for his legal activities. *Complaint* [#3] at 26. Plaintiff contends that the October 16, 2003 assault was carried out by Defendant Haucks and Perry in retaliation for Plaintiff's legal activities, and that Defendant Cooper and Cella were aware of the likelihood of the assault, but facilitated the October 16, 2003 assault due to their desire to retaliate against Plaintiff. *Id.* Finally, Plaintiff contends that Defendant Reid was aware that prison staff were intending to retaliate against Plaintiff, or had retaliated against Plaintiff, but Defendant Reid also retaliated against Plaintiff for his grievances and/or legal activities by failing to protect Plaintiff during the October 16, 2003 assault. *Id.* at 26-27.

As set forth above, the Court finds that any claims related to the October 16, 2003 assault are barred by the applicable statute of limitations. *See* Colo. Rev. Stat. § 13-80-102(g); *Blake*, 997 F.2d at 750. Further, Plaintiff has not established any grounds upon which the statute of limitations may be tolled. *See Olson*, 174 P.3d at 858; *Brodeur*, 169 P.3d at 150. Accordingly, I respectfully **RECOMMEND** that summary judgment be **GRANTED** on Plaintiff's Third Claim for Relief against Defendants Haucks, Perry, Cooper, Cella and Reid for failure to file within the statute of limitations period.

### d.    Fourth Claim for Relief

In his Fourth Claim for Relief, Plaintiff alleges that as a result of and in connection with the October 16, 2003 assault, Defendants Haucks and Perry filed false disciplinary charges against him. *Complaint* [#3] at 28. Second, Plaintiff contends that Defendant Cooper served as the hearing officer on the allegedly false disciplinary charges, and Defendant Cooper refused to step down as hearing officer even though he was biased against Plaintiff and had allowed or encouraged the October 16, 2003 assault in retaliation against Plaintiff for his legal activities. *Id.* Plaintiff has again provided no time frame within which he alleges that these activities occurred. Although it is reasonable to conclude that any COPD charges and/or disciplinary hearings held in connection with the October 16, 2003 assault occurred in close proximity to the assault, no information to that effect has been provided to the Court. Defendants have again not satisfied their initial burden to show that Plaintiff's Fourth Claim for Relief is untimely, and the Court is unable to dismiss Plaintiff's claims against Defendants Haucks, Perry and Cooper on these grounds. *See Aldrich*, 627 F.2d at 1041.

Accordingly, I respectfully **RECOMMEND** that summary judgment be **DENIED** on the portion of Defendants' First Motion for Summary Judgment that argues that the statute of limitations applies to Plaintiff's Fourth Claim for Relief.

### 3. Personal Participation

Defendants next argue that Plaintiff fails to allege the personal participation of certain Defendants in the alleged constitutional violations. *First Motion for Summary Judgment* [#176] at 3.

To maintain a Section 1983 claim against any Defendant, Plaintiff must allege facts showing that the Defendants were personally involved in the decisions leading to Plaintiff's mistreatment. That is, when a defendant is sued in his individual capacity, the Complaint must allege facts that show the defendant *personally participated* in the alleged violation. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted and emphasis provided). Because *respondeat superior* is not within the purview of Section 1983, *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983), the Tenth Circuit has held that a supervisor cannot be held liable for his employees' actions based solely on his supervisory position. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006); *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Therefore, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" *Serna*, 455 F.3d at 1151 (quoting *Jenkins*, 81 F.3d at 994-95). Further, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation. *Id.* (quoting *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006)). To establish this, *Serna* requires that "a plaintiff must show an 'affirmative link' between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Id.* (citations omitted).

### a.     Defendant Reid

Among Plaintiff's remaining claims for relief, Larry Reid, Warden of CSP, is named in Plaintiff's First and Seventh Claims for Relief. *See Complaint* [#3] at 2, *Seventh Claim for Relief* [#33] at 5. In his First Claim for Relief, Plaintiff alleges that he wrote to Defendant Reid on numerous occasions to either inform him of constitutional violations committed by prison staff, or that Plaintiff was intending to file legal complaints against staff. *See Complaint* [#3] at 10, 14. Plaintiff also generally alleges that on numerous occasions Defendant Reid failed to protect Plaintiff by refusing to act upon his knowledge that staff was either intending to harm Plaintiff, or had already harmed Plaintiff. *Id.* at 22-23. In his Seventh Claim for Relief, Plaintiff's sole allegation related to Defendant Reid is that "on February 3, 2007, Plaintiff wrote Warden Reid . . . regarding the severe violent threats to injure him . . . ." *Seventh Claim for Relief* [#33] at 1. Based upon these allegations, it is clear that Plaintiff does not attempt to establish an affirmative link between Defendant Reid's conduct and the alleged constitutional violations based upon Defendant Reid's direct or active participation. Instead, Plaintiff relies entirely on the argument that Defendant Reid failed to adequately supervise or control the employees charged with caring for Plaintiff. However, *respondeat superior* is not with the purview of Section 1983 liability. *McKee*, 703 F.2d at 483. Therefore, in order for a supervisor to be held liable pursuant to Section 1983, there must be a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) (citation omitted). Without a showing of direct responsibility for the alleged

violations, liability will not be imposed on a supervisory official. *Id.* Here, Plaintiff does not allege that Defendant Reid was directly responsible for an alleged constitutional violation; instead, he attempts to hold him liable merely because of his supervisory position at CSP, and on the basis of letters that Plaintiff sent to Defendant Reid on numerous occasions. However, the courts have found that simply sending "correspondence [to the warden] outlining [a] complaint . . . without more, does not sufficiently implicate the warden under § 1983." *Davis v. Arkansas Valley Corr. Facility*, 99 Fed. Appx. 838, 843 (10th Cir. 2004) (unpublished decision); *see also Volk v. Coler*, 845 F.2d 1422, 1432 (7th Cir. 1988) (holding that director of state agency did not personally participate in constitutional violation merely because he was aware of grievance); *Watson v. McGinnis*, 964 F.Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."); *Doyle v. Cella*, 2008 WL 4490111, at *2 (D. Colo. Sept. 30, 2008) (unpublished decision) (finding bare allegation that the defendant warden was "made aware" of constitutional violations insufficient to establish personal participation of the defendant). That is, as the Seventh Circuit observed in *Crowder v. Lash*, 687 F.2d 996, 1005-06 (7th Cir. 1982), to hold a supervisory prison official liable on the basis of communications he had received from a prisoner, "would be to hold any well informed [prison official] personally liable for damages flowing from any constitutional violation occurring at any jail within that [official's] jurisdiction. We believe that such a broad theory of liability is inconsistent with the personal responsibility requirement for . . . a Section 1983 action." (citations omitted). Therefore, because Plaintiff has not sufficiently alleged that

Defendant Reid caused or participated in the alleged constitutional violations, or that an affirmative link exists between the constitutional violation and Defendant Reid's failure to supervise, there is no basis for holding him liable pursuant to Section 1983 and summary judgment is properly granted on Plaintiff's First and Seventh Claims against Defendant Reid. *See, e.g., Serna*, 455 F.3d at 1151; *Lucero v. Hilkey*, 2008 WL 552863, at *20 (D. Colo. Feb. 27, 2008) (unpublished decision) (dismissing the Complaint for failure to establish an affirmative link between alleged constitutional violations and defendants); *Blevins*, 2008 WL 2428941, at *11 (D. Colo. June 12, 2008) (unpublished decision) (finding that the Complaint must be dismissed for failure to allege the participation of any named defendant).

Accordingly, as set forth above, I respectfully **RECOMMEND** that summary judgment be **GRANTED** on Plaintiff's First and Seventh Claims for Relief against Defendant Reid for failure to establish personal participation or supervisory liability.

### b. Defendants Luna, Martin, Craney and Nurse Rita

Although Plaintiff names Defendant Luna in his Complaint and Defendants Martin,[5] Craney, and Nurse Rita in his Seventh Claim for Relief, Plaintiff completely fails to allege their personal participation in any constitutional violation against him. *See Complaint* [#3] at 6; *Seventh Claim for Relief* [#33] at 5. While Plaintiff identifies Defendant Luna in the list of the parties to his lawsuit, none of Plaintiff's four claims for relief contain any additional

---

[5]On October 17, 2008, as per Plaintiff's request, the Court corrected the case caption to change named Defendant Sgt. Oates to Defendant Martin [Docket No. 184].

information or details related to Defendant Luna or his participation in any alleged constitutional violation. *Complaint* [#3] at 6. Further, the sole instance where Plaintiff identifies Defendants Martin, Craney, and Nurse Rita by name is the last paragraph of his Seventh Claim for Relief where Plaintiff states "CSP officials responsible for assault on Plaintiff" and then lists the names of all parties to the claim. *Seventh Claim for Relief* [#33] at 5. Plaintiff's Response to the Motion for Summary Judgment does not contain any additional information regarding Defendants Luna, Martin, Craney or Nurse Rita. *Response* [#185] at 1-15. Here, the allegations underlying Plaintiff's claimed constitutional violations by Defendants Luna, Martin, Craney and Nurse Rita are simply non-existent. There are absolutely no factual averments in his Complaint, or even in his Response to the Motion for Summary Judgment, that suggest that these Defendants were personally involved in the alleged constitutional violations. Plaintiff does not identify any specific action taken on any specific dates or times by any of these Defendants that gave rise to a constitutional violation. Nor has Plaintiff alleged that any of these Defendants personally caused or participated in the alleged constitutional violations. *See Mckee*, 703 F.2d at 483. As Plaintiff has not demonstrated that any of these Defendants had any direct contact with him in relation to the constitutional violations or that they actually knew of and acquiesced in the alleged violations, he has presented no basis for holding them liable in their individual capacities pursuant to Section 1983, and they are properly dismissed. *See, e.g., Serna*, 455 F.3d at 1151; *Lucero*, 2008 WL 552863, at *20; *Blevins*, 2008 WL 2428941, at *11.

Accordingly, as set forth above, I respectfully **RECOMMEND** that summary

judgment be **GRANTED** on Plaintiff's First Claim for Relief against Defendant Luna and Plaintiff's Seventh Claim for Relief against Defendants Martin, Craney and Nurse Rita for failure to allege their personal participation.

### 4. Qualified Immunity

Finally, Defendants argue that the remaining Defendants are entitled to qualified immunity on Plaintiff's surviving claims for relief. *First Motion for Summary Judgment* [#177] at 6.

When the defendant raises qualified immunity on summary judgment, the burden shifts to the plaintiff to satisfy a strict two-part test. *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Id.* (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534-35 (10th Cir. 1995) (citations omitted)). The question of whether the constitutional right was clearly established must be asked in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). In order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth

Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right. *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (1992) (citation omitted). In other words, there must be case law in which a constitutional violation was found based upon similar conduct. *See Callahan v. Millard County*, 494 F.3d 891, 903 (10th Cir. 2007). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment – showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Nelson*, 207 F.3d at 1206 (quotation marks omitted).[6] Accordingly, to survive summary judgment, a plaintiff must point to evidence in the record that "rebut[s] the presumption of the officers' immunity from suit." *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001).

### a.     First Claim for Relief - Excessive Force

The Court must first consider whether Plaintiff has demonstrated that Defendants' actions as alleged in his First Claim for Relief violated a constitutional or statutory right. *Nelson,* 207 F.3d at 1206. Those remaining Defendants in Plaintiff's First Claim for Relief are Brown, Sims, Diclusion, Mora and Olivett.

### i.     Defendants Brown, Sims and Diclusion

Plaintiff alleges that during his time in E-Unit, which appears to have been from

---

[6] This heavier summary judgment burden for the nonmovant stems from the nature and purpose of the qualified immunity defense, which immunizes public officials from lawsuits and protects them "from spending inordinate time and money defending erroneous suits." *Nelson*, 207 F.3d at 1206 (citing *Albright*, 51 F.3d at 1534).

January 27, 2004 to July 20, 2004, Defendants Brown, Sims and Diclusion threatened him with death for filing of grievances, harassed him and called him by racial slurs, and that he was "constantly punched in his kidneys, liver and back of his head, kicked, spit on, had shower door slammed on his legs and arms, [and had] his food trays . . . slammed into his stomach through the tray slot, . . . " by these Defendants. *Complaint* [#3] at 21. Plaintiff further alleges that these Defendants "unnecessarily and wantonly inflicted pain on Plaintiff for no penological purpose other than to maliciously and sadistically cause harm, pain and suffering." *Id.*

The use of excessive force by a prison official on a prisoner can rise to the level of an Eighth Amendment violation. *See Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992) (holding that "excessive force claims brought by convicted prisoners fall under the rubric of the Eighth Amendment's prohibition against cruel and unusual punishment . . .."). The Court's analysis of Plaintiff's Eighth Amendment claim involves both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). First, the Court considers whether objectively Plaintiff has been subjected to an excessive use of physical force. "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities" or those physical punishments rising above *de minimis* uses of force "are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (citations omitted). While Plaintiff has not alleged any particular injury associated with this claim, the nature of his injuries is only one factor in the

determination of whether the use of excessive force constituted an Eighth Amendment violation. *See Northington*, 973 F.2d at 1523 (holding that "significant physical injury" is not required because constitutional injury focuses on whether infliction of pain was unnecessary and wanton). As to the subjective component, the Court considers whether Defendants intended the deprivation, i.e., acted with deliberate indifference to the harm that could result or "maliciously and sadistically use[d] force to cause harm." *See Hudson*, 503 U.S. at 9-10. Indeed, the touchstone inquiry in an excessive force claim is whether the force was applied in a "good-faith effort to maintain and restore discipline or maliciously and sadistically" to cause harm. *See Despain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). The subjective element can only be proved by showing that Defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety" or acted with a sufficiently culpable state of mind. *See Farmer*, 511 U.S. at 837; *Hudson*, 503 U.S. at 8.

As the facts alleged in Plaintiff's Complaint are not controverted by Defendants, and indeed, are accepted as undisputed for purposes of this Motion, Plaintiff has alleged that these Defendants wantonly inflicted daily pain on him by punching him in his kidneys, liver and head, kicking him, and inflicting various other physical tortures for no apparent penological purpose. *See Complaint* [#3] at 21. There is no evidence before the Court that Plaintiff verbally threatened any of these Defendants or that Plaintiff has any prior history of assaultive behavior while in prison. As such, I find that Plaintiff has sufficiently demonstrated that objectively, Defendants used force that was more than *de minimis*, and

subjectively, they did so maliciously and sadistically to cause harm. *See Despain*, 264 F.3d at 978; *Northington*, 973 F.2d at 1523. Indeed, the Constitution prohibits punishment that is "so totally without penological justification that it results in the gratuitous infliction of suffering," *Gregg v. Georgia*, 428 U.S. 153, 183 (1976), and this is the type of punishment that Plaintiff clearly alleges here.

As such, the Court must next consider whether the constitutional right that Defendants allegedly violated was clearly established at the time of the conduct at issue. *Nelson*, 207 F.3d at 1206. The Court finds that the law was clearly established in *Hudson* and *Northington* that prison officials' malicious application of force, which is more than *de minimis*, and that prison officials' failure to prevent such harm when there is an opportunity to do so, violates the Eighth Amendment. *See Hudson*, 503 U.S. at 5; *Northington*, 973 F.2d at 1523.

Therefore, I find that Plaintiff has sufficiently demonstrated that genuine issues of material fact remain about whether the force Defendants Brown, Sims and Diclusion used against Plaintiff violated his Eighth Amendment rights, and that Defendants are not entitled to qualified immunity at this time. *See, e.g., Merritt v. Hawk*, 153 F.Supp.2d 1216, 1223-24 (D. Colo. 2001) (denying defendants' motion for summary judgment on prisoner's excessive force claim because evidence that prison guards "body-slammed [plaintiff] against walls and the floor, kicked, punched and choked him, and slammed his head into walls, while he was handcuffed" was "sufficient to allow a reasonable jury to infer defendants were acting with malicious and sadistic intent"). Accordingly, I respectfully **RECOMMEND** that

summary judgment be **DENIED** on the portion of Plaintiff's First Claim for Relief that alleges Eighth Amendment violations by Defendants Brown, Sims and Diclusion.

### ii.     Defendants Mora and Olivett

The second allegation in Plaintiff's First Claim for Relief is that Defendants Mora and Olivett spit in Plaintiff's food and generally refused to feed him, or only fed him food that was contaminated. *Complaint* [#3] at 21-22. Plaintiff further alleges that Defendant Mora has "groped Plaintiff's buttocks and asked Plaintiff to fondle his genitals, and has passed a flat hand vertically up the crack of the Plaintiff's buttocks, while both defendants Olivett and Mora laugh at Plaintiff." *Id.* at 22. The Court will first address Plaintiff's claim that Defendant Mora sexually molested him.

The Tenth Circuit has noted that, in certain circumstances, unwelcome contact by a prison guard may satisfy the objective element of the Eighth Amendment analysis. *See Levoy v. Mills*, 788 F.2d 1437, 1439-40 (10th Cir. 1986). However the Supreme Court has also noted that, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action. . . .The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted). Indeed, the Tenth Circuit previously held that a female prison guard's suggestive touching of a male inmate, including the allegation that she exposed her breasts to him, was not so repugnant to rise to the level of an Eighth Amendment violation. *See Joseph v. United States Fed. Bureau of Prisons*, 2000 WL

1532783, at *1-2 (10th Cir. Oct. 16, 2000) (unpublished decision). In addition, other courts have addressed similar conduct like Plaintiff alleges here, and held that it does not rise to the level of an Eighth Amendment violation. For instance, where an inmate alleged that a prison guard touched the inmate's penis and pressed it against him, the Second Circuit found that the degree and infrequency of the conduct did "not involve a harm of federal constitutional proportions as defined by the Supreme Court." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (noting that "[t]he isolated episodes of harassment and touching alleged by [the prisoner] are despicable and, if true, they may potentially be the basis of state tort actions, . . . ." but they do not rise to the level of an Eighth Amendment violation). Further, in addressing an inmate's allegation that a prison guard grabbed and rubbed his buttocks, the Sixth Circuit held that such conduct did not state an Eighth Amendment claim. *Jackson v. Madery*, 158 Fed. Appx. 656, 661-62 (6th Cir. May 30, 2005) (unpublished decision). Finally, the District of Kansas addressed a prisoner's allegations that on several occasions, a prison guard grabbed the inmate's buttocks, exposed himself to the inmate, and made sexual advances toward the inmate. *Williams v. Anderson*, 2004 WL 2282927, at *3 (D. Kan. Sept. 7, 2004) (unpublished decision). The *Williams* court held that none of the incidents, either individually or collectively, "involve[d] a harm of constitutional proportions as defined by the Supreme Court." *Id.*

Here, while Defendant Mora's alleged conduct was clearly unwelcome, Plaintiff has failed to describe conduct that would amount to abusive touching or that would "involve harm of federal constitutional proportions as defined by the Supreme Court." *Id.*; *see also*

*Jackson v. Cen. N.M. Corr. Facility*, 976 F.2d 740 (10th Cir. 1992) (unpublished decision) ("Because Plaintiff does not allege that the [offensive touching] was conducted 'in an abusive fashion or with unnecessary force,' he does not state a claim under the Eighth Amendment." (quoting *Levoy*, 788 F.2d at 1439)). In other words, Plaintiff has failed to articulate facts which, if true, suggest "that the [offensive touching] was [conducted] in a manner which was so harmful as to be cruel and unusual in violation of [his] Eighth Amendment rights." *Harris v. Rocchio*, 132 F.3d 42 (10th Cir. 1997) (unpublished decision); *see also Boddie*, 105 F.3d at 861; *Jackson,* 158 Fed. Appx. at 661-62; *Williams*, 2004 WL 2282927, at *3. Therefore, it is unnecessary to consider whether Defendant Mora's actions were deliberately indifferent or sufficiently malicious, except to note that Plaintiff fails to attribute any subjective intent to harm Plaintiff to Defendant Mora. Because Plaintiff's allegations of sexual molestation fail to state a constitutional claim, Defendant Mora is entitled to qualified immunity on this claim. *Saucier*, 533 U.S. at 200-01; *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007). Accordingly, I respectfully **RECOMMEND** that summary judgment be **GRANTED** on the portion of Plaintiff's First Claim for Relief that Defendant Mora sexually molested him, on the grounds that Defendant Mora is entitled to qualified immunity.

Second, the Court considers Plaintiff's allegation that Defendants Mora and Olivett either contaminated his food or refused to feed him, leaving Plaintiff with a nutritionally inadequate diet that resulted in his loss of thirty pounds. *Complaint* [#3] at 21-22.

"The Eighth Amendment's prohibition on cruel and unusual punishment imposes a

duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Ramos v. Lamm*, 639 F.2d 559, 566 (10th Cir. 1980)). Courts have found that a substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim pursuant to the Eighth Amendment. *See Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002); *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983). To state a claim for food deprivation, a prisoner must allege both (1) a "sufficiently serious" deprivation of "the minimal civilized measure of life's necessities" and (2) "deliberate indifference" by prison officials to a "substantial risk of serious harm to an inmate." *Strope v. Sebelius*, 189 Fed.Appx. 763, 766 (10th Cir. 2006) (unpublished decision) (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (quotations omitted)). Here, Plaintiff has alleged that Defendants Mora and Olivett routinely served him with contaminated food, leaving him with a nutritionally inadequate diet that resulted in Plaintiff's loss of thirty pounds. *Complaint* [#3] at 22. He further alleges that they did so deliberately and maliciously for the express purpose of causing him bodily harm. *Id.* Defendants do not provide any facts or statements to controvert Plaintiff's claim. Accordingly, the Court finds that Plaintiff has adequately stated an Eighth Amendment violation for food deprivation, as he demonstrates both that objectively, the deprivation was sufficiently serious, and that subjectively, Defendants were deliberately indifferent to a substantial risk of serious harm. *See, e.g.,*

*Strope*, 189 Fed.Appx. at 766 (finding that prisoner's allegations that his food was routinely served to him spoiled stated a claim for food deprivation pursuant to the Eighth Amendment); *Thompson*, 289 F.3d at 1222; *Berry,* 192 F.3d at 507; *Robles*, 725 F.2d at 15.

As such, the Court must next consider whether the constitutional right that Defendants allegedly violated was clearly established at the time of the conduct at issue. *Nelson*, 207 F.3d at 1206. In that regard, it is quite clear that the Supreme Court decision in *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), established that prisoners must be provided with adequate food. Accordingly, the Court finds that the law was clearly established that serving a prisoner contaminated and inedible food does violate an inmate's constitutional rights. *See generally Farmer*, 511 U.S. at 832; *Thompson*, 289 F.3d at 1222. Therefore, the Court finds Plaintiff has sufficiently demonstrated that genuine issues of material fact remain about whether the diet Defendants Mora and Olivett provided to Plaintiff subjected him to food deprivation in violation of the Eighth Amendment, such that Defendants are not entitled to qualified immunity at this time. *See Strope*, 189 Fed.Appx. at 766; *Thompson*, 289 F.3d at 1222; *Berry,* 192 F.3d at 507; *Robles*, 725 F.2d at 15.

Accordingly, I respectfully **RECOMMEND** that summary judgment be **DENIED** on the portion of Plaintiff's First Claim for Relief that alleges that Defendants Mora and Olivett deliberately deprived him of food.

### b.       Second Claim for Relief - Deliberate Indifference

Plaintiff's Second Claim for Relief is brought against Defendants Wencl and

Wermers. *Complaint* [#3] at 24. Because Defendants Wencl and Wermers have asserted the defense of qualified immunity, the Court must first consider whether Plaintiff has demonstrated that Defendants' actions violated a constitutional or statutory right. *Nelson,* 207 F.3d at 1206. Plaintiff generally alleges that Defendants Wencl and Wermers were deliberately indifferent to his serious medical needs. *Complaint* [#3] at 24.

A prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Estelle*, 429 U.S. at 104. To establish a claim for deliberate indifference, a plaintiff must first prove that objectively, his medical need is "sufficiently serious." *Farmer*, 511 U.S. at 834. A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted). Second, the plaintiff must prove that, subjectively, the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

### i.    Defendant Wencl

The Court must first examine whether Plaintiff's medical needs as presented to Defendant Wencl were objectively "sufficiently serious." *Farmer*, 511 U.S. at 834. Plaintiff alleges "Defendant Wencl has refused to prescribe any pain medication for Plaintiff's

injuries and has even had Plaintiff's medical pillow confiscated." *Complaint* [#3] at 24.

Plaintiff further alleges that "Defendant Wencl has refused to see Plaintiff for over two years and refused him medical attention for over the two year period." *Id.* Other than these general statements, Plaintiff does not provide any additional, more specific information about his serious medical needs and the deliberate indifference of Defendant Wencl. The Court finds that Plaintiff cannot sustain an Eighth Amendment claim for deliberate indifference to serious medical needs on the facts alleged against Defendant Wencl. That is, Plaintiff does not allege that he suffered from a medical need that was "diagnosed by a physician as mandating treatment or one that [was] so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt*, 199 F.3d at 1224. Instead, Plaintiff generally alleges that he suffered from unknown injuries, that he requested pain medication from Defendant Wencl, and that Defendant Wencl, for an unknown reason, denied this request. *Complaint* [#3] at 24. Even assuming, *arguendo*, that Plaintiff would be able to prove the objective component of a deliberate indifference claim, the Court finds that Plaintiff's claim must still fail, as he completely fails to allege that Defendant Wencl knew of and disregarded "an excessive risk to [Plaintiff's] health and safety." *Farmer*, 511 U.S. at 837. Therefore, there is simply no information provided from which the Court may conclude that Defendant Wencl was both aware of "facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" to Plaintiff and that Defendant Wencl also drew that inference. *Id.* The fact that Defendant Wencl denied Plaintiff pain medication or a "medical pillow" does not state a claim for deliberate indifference, as "[a]

prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citations omitted); *see also Estelle*, 429 U.S. at 107 (noting that the medical decision to forego one form of treatment may be negligence but is not a constitutional violation); *Ramos*, 639 F.2d at 575 (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation). Plaintiff has failed to state a claim for deliberate indifference to his serious medical needs against Defendant Wencl.

### ii.    Defendant Wermers

Plaintiff alleges that on October 19, 2004, Defendant Wermers came to Plaintiff's cell "in regards to his thyroid and Plaintiff was unable to get up from bed, his legs and feet were severely swollen and neck and back pain were severe, Defendant Wermers left and charged Plaintiff five dollars." *Complaint* [#3] at 25.

The Court must again examine whether Plaintiff's condition on October 19, 2004 was objectively "sufficiently serious." *Farmer*, 511 U.S. at 834. Although Plaintiff makes general allegations related to a thyroid condition, swelling in his lower extremities, and pain in his neck and back, Plaintiff does not allege that his condition had "been diagnosed by a physician as mandating treatment." *Hunt*, 199 F.3d at 1224. Notwithstanding, as Plaintiff alleges that he was completely unable to rise from his bed or walk, that his legs and feet were "severely swollen," and that he was in severe pain, the Court finds that these symptoms may have been "so obvious that even a lay person would easily recognize the

necessity for a doctor's attention," such that Plaintiff may be able to prove that objectively his condition was "sufficiently serious." *Id.*

However, even again assuming that Plaintiff would be able to prove the objective component of his claim, the Court finds that Plaintiff's claim must fail, as he again completely fails to allege that Defendant Wermers knew of and disregarded "an excessive risk to [Plaintiff's] health and safety." *Farmer*, 511 U.S. at 837. That is, there is simply no information provided from which the Court could conclude that Defendant Werners was both aware of "facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," to Plaintiff and that Defendant Wermers also drew that inference. *Id.* Again, the fact that Defendant Wermers examined Plaintiff on October 19, 2004, and decided that no treatment was needed based on upon his medical opinion does not state a claim for deliberate indifference, as "[a] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins*, 165 F.3d at 81; *see also Estelle*, 429 U.S. at 107 (noting that the medical decision to forego one form of treatment may be negligence but is not a constitutional violation); *Ramos*, 639 F.2d at 575 (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation).

Because Plaintiff's allegations of deliberate indifference fail to state a constitutional claim, Defendants Wencl and Wermers are entitled to qualified immunity on this claim. *See Saucier*, 533 U.S. at 200-01; *Boles*, 486 F.3d at 1180. As set forth above, I respectfully **RECOMMEND** that summary judgment be **GRANTED** on Plaintiff's Second Claim for Relief

against Defendants Wencl and Wermers on the grounds that Defendants Wencl and Wermers are entitled to qualified immunity.

### c.   Fourth Claim for Relief - Due Process Violations

Plaintiff's Fourth Claim for Relief alleges that Defendant Haucks and Perry filed false COPD charges on Plaintiff, in retaliation for his use of the grievance process and/or legal system. *Complaint* [#3] at 28. Plaintiff also alleges that Defendant Cooper served as a biased hearing officer regarding these charges. *Id.* Plaintiff alleges that these actions violated his Fourteenth Amendment due process rights. *Id.* Plaintiff does not provide records from these disciplinary proceedings, nor inform the Court of the results of the hearing, or whether any penalties were imposed. Because Defendants Cooper, Haucks and Perry have asserted the defense of qualified immunity, the Court must first consider whether Plaintiff has demonstrated that Defendants' actions as alleged in his Fourth Claim for Relief violated a constitutional or statutory right. *Nelson,* 207 F.3d at 1206.

As a preliminary matter, Plaintiff has alleged that both his procedural and substantive due process rights were violated. Despite the varying labels Plaintiff has attached to his myriad claims, and his attempts to package each claim under multiple constitutional dimensions, I will not be rigidly guided by Plaintiff's labels. *See Castro v. United States*, 540 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a *pro se* party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis"). That is, substantive due process claims are disfavored if the claim can be analyzed

under "an explicit textual source of constitutional protection." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Because Plaintiff's retaliation claim is more properly analyzed pursuant to the protections provided by the First Amendment, the Court will construe it as such. Accordingly, the Court construes Plaintiff's Fourth Claim for Relief to assert both a procedural due process and a First Amendment retaliation claim, and will analyze both claims below.

### i.    Procedural Due Process

Plaintiff alleges that the disciplinary charges and hearing violated his right to procedural due process, as he argues that "the disciplinary conviction on a trumpt-up [sic] charge[s] . . . not only will assure Plaintiff's continued confinement at CSP along with the deprivation of privileges for a very long time, but it also stigmatizes him and severely diminishes, if not completely abolishes, any parole prospects." *Complaint* [#3] at 28. Although far from clear, the Court construes Plaintiff's claim as one that, as a result of the COPD charges, he was either assigned to a more restrictive confinement, that he lost certain privileges or parole eligibility, or all three.[7]

"The Due Process Clause guarantees due process only when a person is to be

---

[7]The Court also notes that a plaintiff's claim challenging the procedures used during a prison disciplinary proceeding is not cognizable pursuant to Section 1983 if a judgment in the plaintiff's favor would imply the invalidity of the prison disciplinary conviction and concomitant loss of good-time credits. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Mariani v. Stommel*, 251 Fed. Appx. 536 (10th Cir. Oct. 16, 2007) (unpublished decision) (inmate alleged bias of hearing officer). Because it is not clear whether Plaintiff has lost any good-time credits, and because Defendants have not raised this argument, the Court will not address it at more length here, other than to note that it may provide a separate grounds for dismissal of Plaintiff's procedural due process claim.

deprived of life, liberty, or property." *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (citation omitted). A plaintiff must make two showings in order to proceed on a procedural due process claim. *See Bartell v. Aurora Public Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001). First, he must show that he possesses a protected liberty interest. *See id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184–85 (10th Cir. 2001). Second, he must show that the procedures used in addressing his liberty interest were inadequate under the circumstances. *See Bartell*, 263 F.3d at 1149. The Supreme Court has held that, for prisoners, a liberty right exists only where an interference with that right would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). However, the mere placement in administrative segregation does not, on its own, implicate a liberty interest. *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). That is, a prisoner has no inherent constitutional right in not being placed in disciplinary confinement. *See Sandin*, 515 U.S. at 487. The segregation of a prisoner as a form of punishment or as administrative management of a correctional facility is not an unexpected incident of a criminal sentence and does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" protected by the Due Process Clause. *Id.* at 485; *see also Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) ("the transfer of an inmate to a less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence") (internal quotation marks and citation

omitted).  Further, it is well-established that neither the Constitution nor Colorado prison rules and regulations create a liberty interest in prisoners' classifications.  *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (concerning the Constitution); *Templeman*, 16 F.3d at 369 (concerning Colorado provisions); *Smith v. Romer*, 107 F.3d 21 (10th Cir. 1997) (noting that a prisoner's assignment to administrative segregation at CSP did not provide him with a procedural due process claim); *see also Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding that the Due Process Clause does not protect a prisoner against transfer to a more restrictive prison).  Finally, the constitutional standard of "atypical and significant hardship" as set forth in *Sandin* applies even if the disciplinary charges are false or not sustained. *See Franks v. Waite*, 2008 WL 687201, at *3 (D. Kan. March 11, 2008) (unpublished decision).

The Tenth Circuit requires that district courts examine the conditions of confinement before they conclude whether such conditions impose an atypical and significant hardship on the inmate.  *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (citing *Gaines v. Stenseng*, 292 F.3d 1222, 1225-26 (10th Cir. 2002) (reviewing dismissal of a § 1983 claim and ruling that, without "carefully examin[ing] the conditions of the prisoner's confinement," it was error to find 75-day disciplinary segregation not atypical)).  A determination of what constitutes an atypical and significant hardship necessarily includes a consideration of whether the condition in question is a dramatic departure from what would be expected of a person serving a similar sentence.  This consideration includes whether the segregation complained of (1) differs significantly from other types of

segregation; (2) differs significantly from what it would have been had the prisoner remained in the general prison population; (3) increases the duration of a prisoner's sentence; (4) is for an indefinite term; and (5) furthers a legitimate interest. *Sandin*, 515 U.S. at 484-87; *Estate of DiMarco v. Wy. Dep't of Corr.*, 473 F.3d 1334,1342 (10th Cir. 2007).

Plaintiff has failed to allege facts to show that the circumstances of his incarceration were "atypical" or that the repercussions from his COPD charges caused him to suffer a significant hardship in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484. Indeed, Plaintiff has failed to provide details which would address any of the necessary elements as set forth in *DiMarco*, 473 F.3d at 1342. That is, he does not indicate whether or how long he was placed in administrative segregation, nor how his theoretical placement in administrative segregation differed from his normal confinement or what activities he was forced to go without. As noted earlier, he does not indicate that his placement in administrative segregation impacted the length of his confinement, other than his vague statement that his parole prospects may be "severely diminished." *Complaint* [#3] at 28. Therefore, although Plaintiff states that he continues "to suffer an aytpical and significant hardship," his bare and conclusory allegations are insufficient to preclude dismissal of this claim. *See Hall,* 935 F.2d at 1110-12 (broad reading of pro se plaintiff's complaint does not relieve plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based); *Rainey v. Bruce,* 2003 WL 21907609 at *1-2 (10th Cir. Aug. 11, 2003) (unpublished decision) (indigent state inmate's allegations

that he suffered from discrimination, harassment and retaliation, conspiracy and on-going violations of his constitutional rights were insufficient to state claim for relief under § 1983, where inmate's assertions consisted of a jumble of rambling, incoherent rants presented in undifferentiated and conclusory fashion, unsupported by specific factual averments or legal authority). Considering all of the above factors, and Plaintiff's failure to address any of them, I cannot find that the Complaint, even accepting its vague allegations as true, sufficiently implicates a liberty interest. Plaintiff has not alleged that the prison conditions he endured imposed an "atypical and significant hardship." *See Sandin*, 515 U.S. at 484.

As to the alleged provision of inadequate process, because Plaintiff has failed to sufficiently allege the deprivation "of any liberty to which he was entitled, no particular process was constitutionally required." *Id.* at 371. Accordingly, because Plaintiff's allegations of procedural due process violations fail to state a constitutional claim, Defendants Haucks, Perry and Cooper are entitled to qualified immunity on this claim. *See Saucier*, 533 U.S. at 200-01; *Boles*, 486 F.3d at 1180. As set forth above, I respectfully **RECOMMEND** that summary judgment be **GRANTED** on Plaintiff's Fourth Claim for Relief to the extent it asserts a procedural due process claim against Defendants Haucks, Perry and Cooper on the grounds that these Defendants are entitled to qualified immunity.

### ii.     First Amendment - Retaliation

Second, Plaintiff alleges that these charges were brought against him in retaliation for his use of the grievance process and/or legal system. *Complaint* [#3] at 28. "The existence of an improper motive for disciplining a prisoner which results in interference with

a constitutional right" may give rise to a cause of action pursuant to Section 1983. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). Access to the courts is a fundamental right protected by the Constitution, including the First Amendment right to petition the government for redress of grievances. *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985). Because a prisoner must first file a grievance in order to ultimately gain access to courts to state a claim for relief pursuant to 42 U.S.C. § 1997e, punishing him for actually filing a grievance would state a claim for both denial of access to the courts and violation of the First Amendment. *See id.* ("It is also one aspect of the First Amendment right to petition the government for redress of grievances"); *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (holding that retaliation for filing lawsuits and administrative grievances "violates both the inmate's right of access to the courts and the inmate's First Amendment rights"). Therefore, "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Maschner*, 899 F.2d at 947. "This principle applies even where the action taken in retaliation would be otherwise permissible." *Id.* at 948. Nevertheless, a prisoner is "not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prisons merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). That is, not "every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." *Dawes v. Walker*, 239 F.3d 489, 492-93 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). Instead, "in order to establish a First Amendment retaliation claim, a prisoner must

demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action." *Baldauf v. Hyatt*, 2008 WL 280839, at *7 (D. Colo. Jan. 31, 2008) (unpublished decision) (quoting *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004)). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (internal quotation marks and citation omitted). "[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, . . . would not have taken place." *Id.*

Plaintiff's conduct in filing grievances and lawsuits is protected conduct, and thus satisfies the first element of a First Amendment retaliation claim. *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (holding that prison officials may not retaliate against prisoners for filing lawsuits or petitioning for redress of grievances); *Nordgren*, 762 F.2d at 853. Second, Plaintiff asserts that disciplinary charges were filed against him, which is sufficient to satisfy the element of adverse action. *See Zarska v. Higgins*, 171 Fed.Appx. 255, 259 (10th Cir. 2005) (unpublished decision). However, Plaintiff has failed to satisfy the third element of a retaliation claim by adequately asserting any alleged causal connection between the filing of his lawsuits and grievances and Defendants' conduct. "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (citation omitted). That is, "it is imperative that [a] plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege

specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation."). The courts have recognized that, in retaliation claims, the presentation of circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation. *See Maschner,* 899 F.2d at 949 (holding that the inmate sufficiently supported retaliation claim with "only means available to him -- circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants"). However, here Plaintiff does not provide any chronology of events or any other circumstantial evidence from which the Court could plausibly conclude that retaliation for protected activities occurred. Indeed, Plaintiff offers no more than his bare assertion that Defendants were motivated to retaliate against him for "the inmate grievance Plaintiff filed on both Defendants Cooper and Cella for refusing to feed Plaintiff unless he dismissed his lawsuit on staff, their friends and co-workers." *Complaint* [#3] at 28. Plaintiff has provided no more than "his personal belief that he is the victim of retaliation." *Jones*, 188 F.3d at 325. Therefore, Plaintiff's bare, conclusory assertions do not provide sufficient detail regarding a causal connection between his protected conduct and Defendants' actions, and Plaintiff's retaliation claim cannot survive.

Because Plaintiff's allegations fail to state a constitutional claim for retaliation pursuant to the First Amendment, Defendants Cooper, Haucks and Perrry are entitled to

qualified immunity on this claim. *Saucier*, 533 U.S. at 200-01; *Boles*, 486 F.3d at 1180.

Accordingly, as set forth above, I respectfully **RECOMMEND** that summary judgment be

**GRANTED** on Plaintiff's Fourth Claim for Relief to the extent it asserts a First Amendment

retaliation claim against Defendants Haucks, Perry and Cooper on the grounds that these

Defendants are entitled to qualified immunity.

### d.     Seventh Claim for Relief - Excessive Force Claims

The remaining Defendants in Plaintiff's Seventh Claim for Relief are Colton, Hamula,

Woolfolk, Miklich and Mathews.  Because these Defendants have asserted the defense of

qualified immunity, the Court must first consider whether Plaintiff has demonstrated that

Defendants' actions as alleged in his Seventh Claim for Relief violated a constitutional or

statutory right.  *Nelson,* 207 F.3d at 1206.

Plaintiff alleges that on May 10, 2007, Defendants Mathews, Hamula, and Colton

came to Plaintiff's cell to handcuff him and escort him to "special controls strip cell" for

threatening staff members.  *Seventh Claim for Relief* [#33] at 2.  At that time, Plaintiff

requested that Defendant Miklich be made available, and Miklich was brought to participate

in Plaintiff's removal from his cell.  *Id.*  Plaintiff alleges that after he was handcuffed,

Defendant Hamula placed a spit mask over his face, and Plaintiff was then roughly

escorted to a secluded strip search area.  *Id.* at 2-3.  Next, Plaintiff states that while

Defendant Woolfolk was filming the entire procedure, Defendants Mathews, Hamula and

Colton stripped Plaintiff naked and placed him into restraints.  *Id.* at 3.  At this point, Plaintiff

states that Defendant Miklich left the area.  *Id.*  Next, Plaintiff alleges that Defendants

Hamula and Colton "slammed [him] to the floor very unexpectedly causing him severe excruciating pain to his hip-lower back and began applying pressure to his wrists to the point of breaking them and pushing thumb/knuckle under [Plaintiff's] left ear lobe with great force while he was completely subdued with Hamula and Colton on each side inflicting the worst excruciating pain [Plaintiff] has ever experienced in all his life . . . ." *Id.* Plaintiff further alleges that physical pain was inflicted on him by Defendants for over two hours, and that Plaintiff did not provoke or assault prison officials before they began to assault him. *Id.* Plaintiff further alleges that Defendant Mathews orchestrated the assault and laughed at Plaintiff's pain during the course of the assault. *Id.*

In considering the constitutional violations that Plaintiff alleges here, there appear to be two groups of Defendants – those who actually participated in or organized the alleged assault on Plaintiff, i.e., Defendants Mathews, Hamula and Colton – and those Defendants who merely observed or were involved prior to the assault, i.e., Defendants Miklich and Woolfolk. The Court will analyze Plaintiff's claims against these two groups of Defendants separately.

### i.     Defendants Mathews, Hamula and Colton

As set forth above, the use of excessive force by a prison official on a prisoner can rise to the level of an Eighth Amendment violation. *See Northington*, 973 F.2d at 1523. Moreover, the critical inquiry in an excessive force claim is whether force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically to cause harm. *See Despain*, 264 F.3d at 978 (citation omitted). The facts alleged in Plaintiff's

Complaint are not controverted by Defendants in any way, and indeed, are accepted as undisputed for purposes of this Motion. Plaintiff's allegations clearly demonstrate that Defendants Mathews, Hamula and Colton wantonly inflicted pain on Plaintiff for no penological purpose. Indeed, Plaintiff states that their assault on him was unprovoked, severe, prolonged and occurred while Plaintiff was both naked and held in restraints. *See Seventh Claim for Relief* [#33] at 3. The Constitution prohibits punishment that is "so totally without penological justification that it results in the gratuitous infliction of suffering," and this is the type of punishment that Plaintiff has alleged here. *Gregg*, 428 U.S. at 183.

As such, the Court must next consider whether the constitutional right that Defendants allegedly violated was clearly established at the time of the conduct at issue. *Nelson*, 207 F.3d at 1206. The Court finds that the law was clearly established in *Hudson* and *Northington* that prison officials' malicious applications of force, which are more than *de minimis*, and that prison officials' failure to prevent harm when there is an opportunity to do so, violate the Eighth Amendment. *See Hudson*, 503 U.S. at 5; *Northington*, 973 F.2d at 1523.

Therefore, I find that Plaintiff has sufficiently demonstrated that genuine issues of material fact remain about whether the force Defendants Brown, Sims and Diclusion used against Plaintiff violated his Eighth Amendment rights, and that Defendants are not entitled to qualified immunity at this time. *See, e.g., Merritt*, 153 F.Supp.2d at 1223-24. Accordingly, I respectfully **RECOMMEND** that summary judgment be **DENIED** on the portion of Plaintiff's Seventh Claim for Relief that alleges that Defendants Mathews, Hamula

and Colton assaulted him on May 10, 2007, on the grounds that Defendants are not entitled to qualified immunity.

### ii.    Defendants Miklich and Woolfolk

Plaintiff alleges that Defendant Miklich was present prior to the assault, and assisted in removing Plaintiff from his cell, but left before the actual assault began.  *Seventh Claim for Relief* [#33] at 3.  Plaintiff also alleges that Defendant Woolfolk, using a "camcorder video/audio" filmed the entire assault.  *Id.*  Plaintiff's claims against Defendants Miklich and Woolfolk are based upon Plaintiff's belief that these Defendants failed to intervene to protect Plaintiff against the assault by Defendants Mathews, Hamula and Colton.

"[A]n allegation that a defendant guard simply stood by and observed a beating by other guards and failed to take action to stop it is sufficient, if true, to demonstrate an Eighth Amendment violation."  *Merritt*, 153 F.Supp.2d at 1224 (citing *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994) (prison official may be liable for failure to intervene when watching another inmate choke inmate); *Sasa v. Zavaras*, 166 F.3d 1222 (10th Cir. 1998) (unpublished decision) (finding that prison officials who observed an inmate being beaten by other officials may be liable for failure to protect an inmate from use of excessive force)); *see also Casey v. City of Federal Heights*, 509 F.3d 1278, 1283 (10th Cir. 2007) ("As we have held, a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983) (internal quotations and citation omitted)*; Mick v. Brewer,* 76 F.3d 1127, 1136 (10th Cir.1996) (holding that a law enforcement officer who has an opportunity to intervene to prevent

another law enforcement officer from using excessive force, but fails to do so, may be liable under § 1983). Plaintiff has alleged that Defendant Woolfolk was present during the entire, unprovoked assault by Defendants Mathews, Hamula and Colton and took no action to intervene to prevent their use of excessive force. *Seventh Claim for Relief* [#33] at 3. As such, Plaintiff's uncontested allegation that Defendant Woolfolk failed to intervene to protect Plaintiff from the application of excessive force is sufficient to create a genuine issue about whether Defendant Woolfolk is liable for failing to take action to prevent unconstitutional conduct. *See Merritt*, 153 F.Supp.2d at 1224; *Sasa*, 166 F.3d at 1222.

Further, I find that the law was clearly established in *Hudson, Northington,* and *Mick* that prison officials' malicious application of force, which are more than *de minimis*, and that prison officials' failure to prevent harm when there is an opportunity to do so, violate the Eighth Amendment. Accordingly, Defendant Woolfolk is not entitled to qualified immunity at this time. *See generally Hudson*, 503 U.S. at 5; *Northington*, 973 F.2d at 1523; *Mick*, 76 F.3d at 1136. Accordingly, I respectfully **RECOMMEND** that summary judgment be **DENIED** on the portion of Plaintiff's Seventh Claim for Relief that alleges that Defendant Woolfolk failed to intervene during the May 10, 2007 assault, on the grounds that Defendant Woolfolk is not entitled to qualified immunity.

However, Plaintiff does not allege that Defendant Miklich was present during the assault. That is, Plaintiff states that he requested that he be handcuffed and taken to intake by Defendant Miklich, which Defendant Miklich did. *Seventh Claim for Relief* [#33] at 2. After this, Plaintiff states that Defendant Miklich left the area and there is no other

indication that Defendant Miklich observed, participated, organized or had knowledge of the assault by Defendants Mathews, Hamula and Colton. *Id.* at 2-3. As such, there is no evidence from which the Court could conclude that Defendant Miklich could be held liable for failure to intervene in the assault, as there is no allegation that he either witnessed it or knew it to be imminent. Because Plaintiff's allegations against Defendant Miklich fail to state a constitutional claim for failure to intervene in an alleged constitutional violation, Defendant Miklich is entitled to qualified immunity on this claim. *Saucier*, 533 U.S. at 200-01; *Boles*, 486 F.3d at 1180.

Accordingly, I respectfully **RECOMMEND** that summary judgment be **GRANTED** on the portion of Plaintiff's Seventh Claim for Relief that alleges Defendant Miklich failed to protect Plaintiff from the May 10, 2007 assault, on the grounds that Defendant Miklich is entitled to qualified immunity.

## B.    Second Motion for Summary Judgment

Defendants seek summary judgment on Plaintiff's Sixth Claim for Relief, asserting that Plaintiff failed to exhaust his administrative remedies, and second, that they are entitled to qualified immunity. *Second Motion for Summary Judgment* [#178] at 1.

### 1.    Failure to Exhaust Administrative Remedies

Defendants assert that Plaintiff failed to exhaust his administrative remedies with regard to his Sixth Claim for Relief. *Id.* However, as set forth above, the burden is not on the plaintiff to sufficiently plead exhaustion or attach exhibits proving exhaustion. *Jones*, 549 U.S. at 201. Rather, the burden is on Defendants to assert a failure to exhaust in their

dispositive motion. Defendants have the burden of proof on their claim for failure to exhaust and Defendants must establish every element of this affirmative defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Again, in apparent disregard of their burden to properly support a motion for summary judgment, Defendants have failed to attach any affidavits or deposition transcripts to their Second Motion for Summary Judgment. *See Second Motion for Summary Judgment* [#178] at 1-4. In a footnote, Defendants refer to a grievance that was allegedly attached to the Second Motion for Summary Judgment, but the Court can locate no such grievance. *Id.* at 3, fn. 2. Indeed, like the First Motion, Defendants' Second Motion for Summary Judgment has no exhibits nor supporting evidence attached to it whatsoever. *See id.* As such, Defendants have failed to present any evidence or specific facts supporting their affirmative defense, and instead, simply rest on the conclusory assertions contained in their pleadings, the one thing they may not do on a motion for summary judgment. *See Banc Oklahoma Mort. Corp.*, 194 F.3d at 1097. Accordingly, Defendants have not met their burden of establishing every element regarding Plaintiff's alleged failure to exhaust administrative remedies, and the Court declines to grant summary judgment on these grounds.

### 2. Qualified Immunity

Defendants Raymond and Gonzales argue they are entitled to qualified immunity on Plaintiff's Sixth Claim for Relief. *Second Motion for Summary Judgment* [#178] at 3.

Because Defendants have asserted the defense of qualified immunity, the Court must first consider whether Plaintiff has demonstrated that Defendants' actions violated a

constitutional or statutory right. *Nelson,* 207 F.3d at 1206. Plaintiff alleges that on separate occasions, Defendants Raymond and Gonzales assaulted him with excessive force. *Sixth Claim for Relief* [#9] at 2-3. The use of excessive force by a prison official on a prisoner can rise to the level of an Eighth Amendment violation. *See Northington*, 973 F.2d at 1523. The touchstone inquiry in an excessive force claim is whether force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically to cause harm. *See Despain,* 264 F.3d at 978. While Plaintiff has not alleged any particular injury associated with this claim, the nature of his injuries is only one factor in the determination of whether the use of excessive force constituted an Eighth Amendment violation. *See Northington*, 973 F.2d at 1523 (holding that "significant physical injury" not required because constitutional injury focuses on whether infliction of pain was unnecessary and wanton). Notwithstanding, *de minimis* applications of force, verbal threats and verbal harassment are not proscribed by the Eighth Amendment. *Hudson*, 503 U.S. at 7; *Northington*, 973 F.2d at 1524.

### a. Defendant Raymond

In Plaintiff's Sixth Claim for Relief, he alleges that on July 2, 2006, Defendant Raymond "with a closed fist battered Plaintiff's right side with excessive force." *Sixth Claim for Relief* [#9] at 2. Plaintiff states that he was handcuffed at this time and that he had made no provoking or threatening moves towards Defendant Raymond. *Id.* Plaintiff has alleged that there was no need for the application of force, and that it was imposed for "no penological purpose other than to cause Plaintiff severe harm, injury, pain and suffering."

*Id.* Plaintiff's statement of the facts is not disputed by Defendants. Accordingly, the Court finds that genuine issues of material fact remain as to whether the application of force by Defendant Raymond was unnecessary and wanton. *Northington*, 973 F.2d at 1523.

### b. Defendant Gonzales

Plaintiff further alleges that from November 13, 2005 to January 18, 2006, Plaintiff was assaulted on a daily basis by Defendant Gonzales. *Sixth Claim for Relief* [#9] at 2-3. He alleges that the constitutional violations included "kicking and punching Plaintiff, escorting him to and from shower with severely tight hand-cuffs and holding Plaintiff's fingers . . . and sadistically twisting-wrenching/spraining his fingers and causing Plaintiff severe pain." *Id.* at 3. Plaintiff has alleged that there was no need for the application of force, and that it was imposed for no valid penological purpose and simply for the purposes of "malicious and sadistic daily torturous inflictions of pain . . . ." *Id.* Plaintiff's statement of the facts is not disputed by Defendants. Accordingly, the Court finds that genuine issues of material fact remain as to whether the application of force by Defendant Gonzales was unnecessary and wanton. *Northington*, 973 F.2d at 1523.

As such, the Court must next consider whether the constitutional right that Defendants allegedly violated was clearly established at the time of the conduct at issue. *Nelson*, 207 F.3d at 1206. The Court finds that the law was clearly established in *Hudson* and *Northington* that prison officials' malicious applications of force, which are more than *de minimis*, and that prison officials' failure to prevent harm when there is an opportunity to do so, violate the Eighth Amendment. Therefore, I find that Plaintiff has sufficiently

demonstrated that genuine issues of material fact remain about whether the force Defendants Raymond and Gonzales used against Plaintiff violated his Eighth Amendment rights, and therefore, Defendants are not entitled to qualified immunity at this time. *See, e.g., Merritt*, 153 F.Supp.2d at 1223-24; *see also Hudson*, 503 U.S. at 5; *Northington*, 973 F.2d at 1523.

Accordingly, as set forth above, I respectfully **RECOMMEND** that Defendants' Second Motion for Summary Judgment be **DENIED** on the grounds that Defendants Raymond and Gonzales are not entitled to qualified immunity on Plaintiff's Sixth Claim for Relief.

### C.    Motion for Judgment on the Pleadings

Defendants next move for judgment on the pleadings on Plaintiff's Fifth Claim for Relief, asserting that Plaintiff fails to state a claim for First Amendment and Eighth Amendment relief. *Motion for Judgment on the Pleadings* [#179] at 2-3.

### 1.    First Amendment Claim

In Plaintiff's Fifth Claim for Relief, he alleges that on June 18, 2006, Defendant Desantos[8] came to Plaintiff's cell to collect his legal mail. *Fifth Claim for Relief* [#8] at 1. Plaintiff contends that Defendant Desantos would not "log-in" Plaintiff's legal mail, and instead, "threw both envelopes down on the tier, close[d] Plaintiff's door tray slot and

---

[8]In Plaintiff's Fifth Claim for Relief, he refers to this Defendant as "Officer Santos." However, on September 10, 2007, Plaintiff informed the Court that this Defendant was instead correctly identified as Defendant Desantos [Docket No. 56] and the case caption was corrected accordingly [Docket No. 78].

walked away." *Id.* Plaintiff alleges that, "[f]or [Defendant DeSantos] to deny Plaintiff his constitutional right to file legal mail is to deny him access to the court." *Id.* at 8.

To set forth a claim of denial of access to the courts, a plaintiff must plead and prove that he actually was impeded in his ability to conduct a particular case. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996). That is, an inmate must satisfy the standing requirement of "actual injury" by showing that the denial of legal resources hindered his efforts to pursue a non-frivolous claim. *Id.* at 349-53. To show a cognizable injury sufficient for a plaintiff to seek relief under the First Amendment, he must show that "non-delivery of his legal mail resulted in 'actual injury' by 'frustrat[ing],' 'imped[ing],' or 'hinder[ing] his efforts to pursue a legal claim.'" *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005) (citing *Lewis*, 518 U.S. at 351-53 & n.3 (1996)). Finally, conclusory allegations of injury will not suffice. *Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (citing *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999)).

Here, Plaintiff does not show Defendant DeSantos' action in refusing to receive Plaintiff's legal mail resulted in "actual injury" to Plaintiff via frustration or hindrance of his efforts to pursue a legal claim. *Simkins*, 406 F.3d at 1243. Instead, Plaintiff's own allegations demonstrate that approximately ten minutes after Defendant DeSantos refused to take Plaintiff's legal mail, non-party Lt. Pryor came to Plaintiff's cell, retrieved Plaintiff's mail and "Lt. Pryor then took legal mail to mail room." *Fifth Claim for Relief* [#8] at 2. As such, a delay of ten minutes in sending his legal mail does not satisfy the standing requirement of "actual injury" and Plaintiff cannot state a claim for First Amendment relief

on these facts. *Lewis,* 519 U.S. at 349-53. Therefore, to the extent that Plaintiff's Fifth Claim for Relief may be construed as a First Amendment claim for access to the Courts, I find that Plaintiff fails to state a plausible claim for First Amendment relief. *See Lewis*, 518 U.S. at 349; *Wolff*, 418 U.S. at 576. Accordingly, I respectfully **RECOMMEND** that the Motion for Judgment on the Pleadings be **GRANTED** and that the portion of Plaintiff's Fifth Claim for Relief that alleges a First Amendment Claim against Defendant Desantos be **DISMISSED** pursuant to Fed. R. Civ. P. 12(c).

### 2.    Eighth Amendment Claim

Second, Defendants move for judgment on the pleadings on Plaintiff's Eighth Amendment claim for deliberate indifference. *Motion for Judgment on the Pleadings* [#179] at 3. Plaintiff's Fifth Claim for Relief asserts that Defendants Paulino, Conway, Desantos, Raymond, Smith, Williams and Ball were deliberately indifferent to his serious medical needs. *Fifth Claim for Relief* [#8] at 4.

A prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Estelle*, 429 U.S. at 104. To establish a claim for deliberate indifference, a plaintiff must first prove that objectively, his medical need is "sufficiently serious." *Farmer*, 511 U.S. at 834. A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt*, 199 F.3d at 1224. Second, the plaintiff must prove that subjectively, the prison official "knows of and

disregards an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Finally, a prison medical official who serves "solely . . . as a gatekeeper for other medical personnel capable of treating the condition" may be held liable under the deliberate indifference standard if he "delays or refuses to fulfill that gatekeeper role." *Sealock v. Colorado*, 218 F.3d 1205,1211 (10th Cir. 2000); *see also Estelle*, 429 U.S. at 104-105 (deliberate indifference is manifested by prison personnel "in intentionally denying or delaying access to medical care"). However, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quotation omitted). The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

The Court must first examine whether Plaintiff's condition on June 19, 2006 was objectively "sufficiently serious." *Farmer*, 511 U.S. at 834. Plaintiff alleges that he began having chest pains at 1:30 a.m. on the morning of June 19, 2006. *Fifth Claim for Relief* [#8] at 2. At this time, Plaintiff states that he informed prison staff, and they told him "that medical had been notified and would see Plaintiff soon." *Id.* Plaintiff alleges that he had another, more severe, chest pain at 3:00 a.m., and again informed prison staff. *Id.* at 2-3. At that time, Plaintiff was informed that "the two vans assigned to CCF were out, and that Plaintiff . . . could not be transferred to any medical infirmary or facility and would have to

wait to see medical when they arrived at the facility." *Id.* at 3. Next, Plaintiff alleges that at approximately 6:00 a.m., he was taken to see medical staff. *Id.* At that time, he states that an unidentified nurse practitioner gave Plaintiff an EKG test, and then transferred Plaintiff to a hospital, where he was provided further medical testing. *Id.* Plaintiff does not allege that he suffered a heart attack or any permanent impairment to his heart or health as a result of the events that occurred on June 19, 2006. *Id.*

In *Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005), the Tenth Circuit examined the case of a female inmate who did not receive medical attention until two days after informing prison officials that she suffered from severe chest pains. As a result of the delay, the inmate suffered both a heart attack and permanent impairment to her heart. *Mata*, 427 F.3d at 754. The Tenth Circuit found that "severe chest pain, a symptom consistent with a heart attack, is a serious medical condition under the objective prong of the Eighth Amendment's deliberate indifference standard." *Id.* Therefore, although "not every twinge of pain suffered as the result of delay in medical care is actionable," *Sealock*, 218 F.3d at 1210, like the plaintiff in *Mata*, Plaintiff here has provided evidence of "pain and suffering [that] goes well beyond a twinge . . . .." *Mata*, 427 F.3d at 755. As such, this Court finds that Plaintiff's allegations that he suffered severe chest pains over the period of several hours are sufficient to establish that his medical condition was objectively sufficiently serious. *Id.*; *see also Sealock*, 218 F.3d at 1210 (finding allegation that inmate suffered from severe chest pain was sufficient to establish the objective element of the deliberate indifference test).

Second, the subjective prong of the deliberate indifference test requires that Plaintiff present evidence of the prison officials' culpable states of mind.  *See Estelle*, 429 U.S. at 106.  That is, Plaintiff must prove that subjectively, Defendants knew of and disregarded "an excessive risk to [Plaintiff's] health and safety."  *Farmer*, 511 U.S. at 837.  The Court is aware of other cases where courts have found that a delay in medical treatment was found to satisfy the subjective component of deliberate indifference, but believes that these cases are distinguishable from the facts at hand.  For instance, in *Sealock*, upon the plaintiff informing the defendant that he believed he was having a heart attack, the defendant "refused to transport [the plaintiff] immediately to a doctor or a hospital because it was snowing outside and it would take time to warm up the prison van for transportation."  218 F.3d at 1210.  Based upon these facts, the *Sealock* court concluded that there was evidence that the defendant "knew of and disregarded the excessive risk to [the plaintiff's] health that could result from the delay" sufficient to preclude summary judgment.  *Id.*  Likewise, in the case *Boretti v. Wiscomb*, 930 F.2d 1150,1153 (6th Cir. 1991), the Sixth Circuit found that deliberate indifference of the defendant nurse had been sufficiently demonstrated where the nurse was made aware of the plaintiff's serious need for clean bandages and pain medication for a gunshot wound in his leg, but inexplicably refused to provide treatment, or even call a doctor, for five days.  The *Boretti* court noted that "obduracy and wantonness are indications of deliberate indifference," and that "a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering."  *Boretti*, 930 F.2d at

1154-55 (internal quotations and citations omitted). Finally, in *Mata*, the Tenth Circuit recognized that "[a] prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [his] condition." 427 F.3d at 755. The *Mata* court found that one of the defendants had demonstrated deliberate indifference towards the plaintiff's medical needs because the defendant knew that the plaintiff was suffering from chest pains, but refused to notify a medical professional or seek treatment for the plaintiff. *Mata*, 427 F.3d at 756. That court found that, as a result of the defendant's failure to "contact the appropriate medical personnel, and/or attempt to assist Ms. Mata in any fashion, there is evidence Ms. Mata had to endure unnecessary pain and suffering for several additional hours that did not 'serve any penological purpose.'" *Id.* at 758 (quoting *Estelle*, 429 U.S. at 103).

Here, Plaintiff appears to allege that these officials failed to adequately perform their gate-keeping role, as he alleges that they prevented him from receiving medical care in a timely fashion. *Fifth Claim for Relief* [#8] at 2-3. However, while the Court finds that a four-and-a-half hour delay in responding to Plaintiff's complaint of chest pain is certainly troubling, it does not appear to rise to the level of deliberate indifference considering the circumstances present in this case. That is, while Plaintiff alleges that he suffered pain over the four-and-a-half hours that he waited for medical treatment, Plaintiff's own allegations tend to show that he was provided medical care as soon as medical staff became available to treat Plaintiff. Plaintiff states that he told prison staff that he was having chest pains, and they responded that medical staff had been informed and would

be made available as soon as possible. *Fifth Claim for Relief* [#8] at 2. They apparently also informed Plaintiff that he could not be transferred to a medical facility at that time, as both transport vans were away from the facility. *Id.* at 3. It further appears that Plaintiff was transferred to a medical facility as soon as he saw medical staff, and a medical transport became available. *Id.* In both *Sealock* and *Boretti*, the courts noted that it was clear from the face of the record that medical relief was available to the plaintiff, but was simply not provided. *Sealock*, 218 F.3d at 1210; *Boretti*, 930 F.2d at 1155. In this case, it appears clear from Plaintiff's own allegations that he was provided medical care as soon as it became available. Therefore, accepting Plaintiff's own allegations as true, they do not demonstrate that Defendants, who apparently served as gatekeepers for medical professionals, "delay[ed] or refuse[d] to fulfill that gatekeeper role." *Sealock*, 218 F.3d at 1211; *see also Estelle*, 429 U.S. at 104-105 (deliberate indifference is manifested by prison personnel "in intentionally denying or delaying access to medical care"). Further, there is no indication that Defendants were obdurate or wanton in delaying the medical response to Plaintiff's serious needs. *Boretti*, 930 F.2d at 1154-55. Indeed, as soon as Defendants were informed of Plaintiff's chest pain, by Plaintiff's own omission, they contacted medical personnel. *Fifth Claim for Relief* [#8] at 2. While there was a delay in the medical personnel's response, there is no showing that such delay was caused by the named Defendants' willful intent to harm Plaintiff. *See id.* Therefore, the record simply does not demonstrate that Defendants acted with deliberate indifference to Plaintiff's medical needs. That is, Plaintiff has not sufficiently alleged that Defendants knew of and disregarded "an

excessive risk to [Plaintiff's] health and safety." *Farmer*, 511 U.S. at 837. Accordingly, accepting as true all of Plaintiff's well-pled factual allegations and drawing all reasonable inferences in his favor, as required, the Court finds that Plaintiff has failed "to state a claim for relief that is plausible on its face," for deliberate indifference to his serious medical needs. *TON Services, Inc.,* 493 F.3d at 1236.

Accordingly, I respectfully **RECOMMEND** that the Motion for Judgment on the Pleadings be **GRANTED** and that the portion of Plaintiff's Fifth Claim for Relief that alleges an Eighth Amendment Claim against Defendants Paulino, Conway, Desantos, Raymond, D. Smith, Williams and Ball be **DISMISSED** pursuant to Fed. R. Civ. P. 12(c).

## IV.    Conclusion

As set forth above, the Court respectfully **RECOMMENDS** that:

(1)  **Defendants' Motion for Summary Judgment** [Docket No. 176; Filed October 2, 2008] be **GRANTED IN PART AND DENIED IN PART**.

(2)  **Defendants' Combined Motion for Summary Judgment and Brief** [Docket No. 178; Filed October 2, 2008] be **DENIED**.

(3)  **Defendant's Motion for Judgment on the Pleadings** [sic] **Dismissal of the Supplemental Complaint** [Docket No. 179; Filed October 2, 2008] be **GRANTED**.

If this Recommendation is accepted, the following claims will <u>be dismissed</u>:

(1)      Plaintiff's First Claim for Relief against Defendants Haucks, Perry, Cella, Cooper, Gallagher, Montoya, Jackson, Binder and Valdez for failure to file within the statute of limitations period;

(2)     Plaintiff's Third Claim for Relief against Defendants Haucks, Perry, Cooper, Cella and Reid for failure to file within the statute of limitations period;

(3)     Plaintiff's First and Seventh Claims for Relief against Defendant Reid for failure to establish personal participation or supervisory liability;

(4)     Plaintiff's First Claim for Relief against Defendant Luna and Seventh Claim for Relief against Defendants Martin, Craney, and Nurse Rita for failure to establish their personal participation;

(5)     The portion of Plaintiff's First Claim for Relief that alleges Defendant Mora sexually molested him,on the grounds of qualified immunity;

(6)     Plaintiff's Second Claim for Relief against Defendants Wencl and Wermers on the grounds of qualified immunity;

(7)     Plaintiff's Fourth Claim for Relief against Defendants Haucks, Perry and Cooper on the grounds of qualified immunity;

(8)     Plaintiff's Seventh Claim for Relief against Defendant Miklich on the grounds of qualified immunity; and

(9)     Plaintiff's Fifth Claim for Relief against Defendants Desantos, Paulino, Conway, Raymond, Smith, Williams and Ball pursuant to Fed. R. Civ. P. 12(c).

If this Recommendation is accepted, the following claims will remain:

(1)     The portion of Plaintiff's First Claim for Relief that alleges Defendants Brown, Sims, and Diclusion used excessive force against him in violation of the

Eighth Amendment;

(2)     The portion of Plaintiff's First Claim for Relief that alleges Defendants Mora and Olivett denied him a nutritionally adequate diet in violation of the Eighth Amendment;

(3)     The portion of Plaintiff's Sixth Claim for Relief that alleges Defendants Raymond and Gonzales used excessive force against him in violation of the Eighth Amendment;

(4)     The portion of Plaintiff's Seventh Claim for Relief that alleges Defendants Colton, Hamula and Mathews used excessive force against him in violation of the Eighth Amendment;

(5)     The portion of Plaintiff's Seventh Claim for Relief that alleges Defendant Woolfolk failed to intervene and protect Plaintiff from Defendants' Colton, Hamula and Mathew's application of excessive force in violation of the Eighth Amendment.

FURTHER, IT IS **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this Recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *In re Key Energy Resources Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this Recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:

\_\_s/ Kristen L. Mix_____

United States Magistrate Judge

Dated: February 9, 2009