IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 06-cv-01222-CMA-KLM

JOSE MEDINA ESCOBAR,

    Plaintiff,

v.

EDWARD MORA,
RENEE OLIVETT,
MARK MATTHEWS,
WILLIAM COLTON,
FRANK HAMULA, and
HARLAN WOOLFOLK,

    Defendants.

---

**ORDER DISMISSING REMAINING CLAIMS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AND FAILURE TO STATE ACTIONABLE CLAIMS, VACATING TRIAL DATES, AND DENYING AS MOOT PLAINTIFF'S MOTION TO AMEND FINAL PRETRIAL ORDER AND PLAINTIFF'S REQUEST FOR REVIEW OF TRIAL MATERIAL AND REQUEST FOR SUBPOENA**

---

This matter, for which a three-day jury trial is set to commence on September 6, 2011, is before the Court *sua sponte*. On May 25, 2011, the Court issued an Order Directing Further Briefing by Defendants on Plaintiff's Exhaustion of Remaining Claims ("May 25 Order"). (Doc. # 325.) Specifically, after pending for more than five years, the following two claims remain:

- Claim 1: Eighth Amendment violation against Defendants Edward Mora and Renee Olivett for cruel and unusual punishment arising from an alleged failure to provide Plaintiff a nutritionally adequate diet; specifically, Defendants allegedly deprived him of two meals a day for approximately fifteen months, causing Plaintiff to lose thirty pounds;

and

- Claim 7: Eighth Amendment violation against Defendants Mark Matthews, William Colton, Frank Hamula, and Harlan Woolfolk for excessive use of force.[1]

(*See* Doc. ## 219 at 17, 274 at 13-14, and 321 at 1-2.) In the May 25 Order, the Court noted that throughout the pendency of this matter, whether Plaintiff exhausted his administrative remedies has been at issue. (Doc. # 325 at 2.) The Court further stated that, upon review of the case file, including copies of all grievances submitted, it was "unconvinced" that Plaintiff exhausted his administrative remedies with respect to the remaining claims. (*Id.*) Accordingly, the Court directed the parties to submit further briefing and documentary evidence concerning whether Plaintiff has exhausted his administrative remedies in connection with the remaining claims. (Doc. # 325 at 3.) To the extent that Plaintiff failed to exhaust his administrative remedies, the Court directed Defendants to also address whether Plaintiff's failure to exhaust was procured from the action or inaction of prison officials. (*Id.*)

Pursuant to the Court's May 25 Order, Defendants submitted additional briefing on June 7, 2011 (Doc. # 329), and Plaintiff responded on June 22, 2011 (Doc. # 331).

---

[1] The Court recognizes that the Second Amended Final Pretrial Order (Doc. # 321) identifies additional conduct that is the basis for Plaintiff's Claims 1 and 7. Specifically, Claim 1 is also premised upon Defendants Mora and Olivett's "filing numerous false C.O.P.D. disciplinary reports to restrict all his TV, phone and canteen privileges, and abolish[ing] all prospects of parole" and "destroy[ing] and confiscat[ing] Plaintiffs [sic] personal legal property to hinder his access to the court." (Doc. # 321 at 2.) Claim 7 is also premised upon Defendants Matthews, Hamula, Colton and Woolfolk's "denying [Plaintiff] medical attention by Dr. Craney" and Defendant Matthews' "fabricating false C.O.P.D. charges . . . to justify placing Plaintiff in a death threatening situation." (*Id.*) The Court will address that additional conduct later in this Order, in a section entitled "Additional Conduct."

For the reasons discussed below, the Court finds that Plaintiff exhausted his administrative remedies in connection with Claim 1, but did not exhaust his remedies in connection with Claim 7. The Court also finds that the conduct underlying Claim 1 fails to rise to the level of a constitutional violation and that Plaintiff's allegations concerning the Additional Conduct fail to state actionable constitutional claims. Accordingly, dismissal of the remaining claims, Claims 1 and 7, and vacation of the trial dates are warranted.

## I.  STANDARDS OF REVIEW

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). Nevertheless, Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court's function is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court,

however, need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). Further, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

Finally, pursuant to 28 U.S.C. § 1915(e)(2)(B), a court **shall** dismiss a case filed under the *in forma pauperis* statute **at any time** if the court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. "Simply because one is indigent, there is no constitutional right to the expenditure of public funds and the valuable time of federal courts to prosecute an action which is totally without merit." *Collins v. Cundy*, 603 F.2d 825, 828 (10th Cir. 1979). "A federal constitutional question must exist 'not in mere form, but in substance, and not in mere assertion, but in essence and effect.'" *Wells v. Ward*, 470 F.2d 1185, 1189 (10th Cir. 1972) (quoting *Cuyahoga River Power Co. v. N. Ohio Traction & Light Co.*, 252 U.S. 388, 397 (1920)). Courts "must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). Additionally, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Id*. at 1218. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (internal quotations omitted).

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES REQUIREMENT

Under the PLRA, a plaintiff must exhaust the available administrative remedies before filing an action in federal court challenging prison conditions, under 42 U.S.C. § 1983. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). There are specific filing requirements for prisoners seeking to file civil actions regarding prison conditions, whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong. *Porter v. Nussle,* 534 U.S. 516, 532 (2002). A prisoner must satisfy this exhaustion requirement even where the "available" remedies would appear to be futile in providing the kind of remedy sought. *Jernigan,* 304 F.3d at 1032 (citing *Booth v. Churner,* 532 U.S. 731, 740 (2001)). If a grievance procedure is available, then a prisoner must avail himself of it. *Booth,* 532 U.S. at 741. An inmate who begins the grievance process but does not complete it is not allowed to pursue a claim under the PLRA for failure to exhaust his administrative remedies. *Jernigan*, 304 F.3d at 1032. Finally, when deciding a motion to dismiss for failure to exhaust nonjudicial remedies, courts have looked beyond the pleadings to decide disputed issues of fact. *See Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003).

The Colorado Department of Corrections' ("CDOC") procedures for filing grievances are set forth in Administrative Regulation ("AR") 850-04-IV-A through 850-

04-IV-K. These procedures require that Step One grievances must be filed no later than thirty calendar days after the date the prisoner knew, or should have known, of the facts giving rise to the grievances. AR 850-04-IV-I. Additionally,

- Each grievance shall address only one problem or complaint and include a description of the relief requested. Problems that arise from the same incident or set of facts shall be grieved in one grievance, even though it may involve multiple DOC employees, contract workers, or volunteers.

- A substantive issue may not be added at a later step if it has not been contained in each previous step of that particular grievance. All issues and remedies contained in the original grievance must be incorporated into each subsequent step of the grievance. Failure to renew each element of the complaint and/or requested relief in subsequent steps shall be deemed a waiver of those elements and/or requested remedy.

AR 850-4-IV-E (1) and (2).

- When an offender wishes to proceed to the next step in the process, the offender shall file the next step within five calendar days after receiving the response.

- In the event the time limit concerning any step of the process expires without a response, the offender may proceed to the next step within five calendar days of the date the response was due.

AR 850-4-IV-I(1).

### III. ANALYSIS

**A.   CLAIM 1: EIGHTH AMENDMENT VIOLATION AGAINST DEFENDANTS EDWARD MORA AND RENEE OLIVETT FOR CRUEL AND UNUSUAL PUNISHMENT**

As noted above, Plaintiff alleges that Defendants Mora and Olivett subjected him to cruel and unusual punishment in violation of the Eighth Amendment by depriving him

of two meals a day for approximately fifteen months, causing Plaintiff to lose thirty pounds. Specifically, Plaintiff alleges that Defendant Mora would frequently spit in Plaintiff's breakfast and lunch, which conduct Defendant Olivett, as the unit lieutenant-supervisor would condone and encourage by allowing Defendant Mora to remain in charge of feeding Plaintiff, despite having knowledge that Mora would spit in Plaintiff's food. (Doc. # 3, ¶ 64.)

In response to the Court's request for further briefing on the issue of exhaustion, Defendants assert that Plaintiff has not exhausted his administrative remedies in connection with his allegations against Defendants Mora and Olivett in Claim 1. (Doc. # 329 at 3.) In support, Defendants attach the various grievances Plaintiff filed in connection with these incidents. As evidenced by these exhibits, on September 21, 2005, Plaintiff filed a Step 1 grievance (Grievance No. CS05/06-317) asserting that Defendants Olivett and Mora harassed Plaintiff from July 20, 2004, to September 16, 2005, which harassment consists of actually spitting and pretending to spit in Plaintiff's breakfast and lunch, or condoning such conduct. (Doc. # 329-1 at 1.)

On November 2, 2005, a couple of weeks after Plaintiff's Step 1 grievance was denied, Plaintiff filed a Step 2 grievance in which he complained of Defendant Mora's continued acts of spitting in Plaintiff's breakfast and lunch. (Doc. # 329-1 at 2.) Although Plaintiff does not explicitly mention Defendant Olivett by name, Plaintiff stated that "[a]ll CSP officials stated in Step 1 grievance were made aware of [Defendant] Mora's severe [sic] inappropriate conduct and allowed him to continue[.]" (*Id.*) The

reference to "all CSP officials stated in Step 1 grievance" includes Defendant Olivett. On November 28, 2005, in response to the Step 2 grievance, Defendant Olivett stated that she "never laughed or encouraged unprofessional behavior from any staff," and stated that Plaintiff "never offered proof of the allegations of [Mora] spitting in [Plaintiff's] trays[.]" (*Id.*)  Nevertheless, Defendant Olivett noted that Plaintiff has "been moved to another unit as a resolution to [his] claims" and, therefore, the "grievance is resolved and no further action is needed." (*Id.*)

Although Defendants acknowledge that the issues raised in Plaintiff's aforementioned grievance were deemed resolved when Plaintiff was moved to a new unit and away from Defendants Mora and Olivett, Defendants nevertheless contend that "[s]imply moving [ ] Plaintiff does not correct the problem of the alleged wrongful actions of Defendants Mora and Olivett" and, therefore, Plaintiff should have filed a Step 3 grievance.  (Doc. # 329 at 4) (relying upon *Ross v. County of Bernalillo*, 365 F.3d 1181 (10th Cir. 2004)).  However, the Court finds that Defendants are estopped from asserting Plaintiff's failure to exhaust as an affirmative defense because Defendants informed Plaintiff that the "grievance is resolved and no further action is needed."[2]  *See Hemphill v. New York*, 380 F.3d 680, 688-89 (2d Cir. 2004) (holding that a plaintiff's failure to exhaust may be excused where the plaintiff was misled or otherwise deterred from exhausting all administrative remedies); *see also Winston v. Woodward*, No. 05 Civ. 3385, 2008 WL 2263191, at *9 (S.D.N.Y. May 30, 2008) (unpublished) ("Estoppel

---

[2] (Doc. # 329-1.)

will be found where an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible.") (internal quotation omitted). Thus, having found that Defendants are estopped from raising the failure to exhaust issue, the Court will consider the merits of Plaintiff's Eighth Amendment claim.

"The Eighth Amendment prohibits the infliction of **cruel and unusual punishment** and requires prison officials to 'ensure the inmates receive adequate food, clothing, shelter, and medical care and take reasonable measures to guarantee the safety of the inmates.'" *Strope v. Cline*, No. 07-3254, 2010 WL 3721700, at *8 (D. Kan. Sept. 15, 2010) (unpublished) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (modification omitted and emphasis added)). "Only a significant deprivation of food gives rise to a claim under the Eighth Amendment." *Id.* (citing *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002)). "Prisoners are entitled to nutritionally adequate food that is prepared and served under conditions which do not present an immediate **danger to their health** and well being." *Strope v. Cummings*, No. 06-3021, 2009 WL 484453, at *11 (D. Kan. Feb. 26, 2009) (emphasis added) (citing *Ramos v. Lamm*, 639 F.2d 559, 570-71 (10th Cir. 1980)). "A substantial deprivation of food may be serious enough to state an Eighth Amendment claim, but minor deprivations for short periods do not." *Id.* (citing *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002)).

"To state an Eighth Amendment food deprivation claim, plaintiff must allege (1) a sufficiently serious deprivation of the minimal civilized measure of life's necessities and (2) deliberate indifference by prison officials to a substantial risk of serious harm."

*Id.* (citing *Strope v. Sebelius*, 189 F. App'x 763, 766 (10th Cir. 2006)). "[D]eliberate indifference means more than mere negligence; the prisoner must show reckless behavior, in which a person knows of and disregards an excessive risk to inmate health or safety; the person must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Strope v. Pettis*, No. 03-3383, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (unpublished) (citing *Farmer*, 511 U.S. at 837).

In the instant case, Plaintiff's allegations and the submitted grievances fail to demonstrate that Plaintiff was deprived of nutritionally adequate food or that the food was prepared and served under conditions that presented an immediate danger to Plaintiff's health and well being. Further, Plaintiff's allegations fail to demonstrate that Defendants Mora and Olivett knew of and were deliberately indifferent, *i.e.*, more than merely negligent, to an **excessive** risk to Plaintiff's health or safety. Furthermore, Plaintiff fails to allege that Defendants Mora and Olivett were aware of the facts from which the inference could be drawn that a **substantial** risk of serious harm exists and that Defendants Mora and Olivett actually drew that inference. Although Plaintiff alleges that he lost approximately thirty pounds in a fifteen-month period as a result of Defendants' spitting in his breakfast and lunch, Plaintiff's allegations render clear that his weight loss was a result of Plaintiff's own choice to not eat his breakfasts and lunches during that period and not from some poison or other contaminant in the food.

While the notion of eating food that has been spat into does make one cringe, the case law renders clear that Plaintiff's bare allegations do not rise to the level of a constitutional violation. Even if Plaintiff's food was spat into, Plaintiff has not alleged and cannot prove that such conduct contaminated the food, rendered it poisonous, or that such food made Plaintiff ill. Further, the submitted grievances call into question the veracity of Plaintiff's allegations concerning the alleged spitting. On October 19, 2005, Defendant Mora appears to have responded to Plaintiff's Step 1 grievance, Grievance No. CS05/06-317. (*See* Doc. # 329-1 at 1.) In that response, Defendant Mora stated, "The inmate never made an attempt to resolve his issues with dialogue. I am unclear on the inmates [sic] request for resolution. The inmates [sic] claims are completely false. This grievance is denied." (*Id.*) On November 28, 2005, Defendant Olivett responded to Plaintiff's Step 2 grievance, CS05/06-317. (*See* Doc. # 329-1 at 2.) In that response, Defendant Olivett stated, "I can assure you CO Mora has never spit [sic] in your food while I have been in charge of C-pod . . . . You never offered proof of the allegations of his spitting in your trays (i.e. showing the tray to staff with the spit in it). You claim other staff have witnessed this . . . we have statements contrary to your claims." (*Id.*) *Cf. Strope v. Pettis*, No. 03-3383, 2004 WL 2713084, at *8 (D. Kan. Nov. 23, 2004) (unpublished) (finding an actionable Eighth Amendment claim where the plaintiff alleged that he was denied nutritionally adequate food, served food that was spoiled and outdated, and that the food was prepared in an area infested with rodents and insects); *Wolters v. Estate of Conner*, No. 03-3251, 2005 WL 1842841, at *4-5

(D. Kan. July 29, 2005) (unpublished) (denying the defendant's motion for summary judgment on Eighth Amendment claim in light of evidence that the prison's reduction in food portions rendered the plaintiff ill). Rather, Plaintiff lost weight because he did not want to eat the food that was not necessarily contaminated or rendered poisonous or otherwise inedible.

Accordingly, for the foregoing reasons, the Court finds that Plaintiff has failed to state an actionable Eighth Amendment claim and, therefore, dismissal with prejudice is warranted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed. R. Civ. P. 12(b)(6). *See Lewis v. McKinley County Bd. of County Comm'rs*, No. 10-2221, 2011 WL 2194013, at *7 (10th Cir. June 7, 2011) (unpublished) (stating that dismissal with prejudice is appropriate only where it is so obvious that the plaintiff cannot prevail on the alleged facts and it would be futile to give him an opportunity to amend).

**B.     CLAIM 7: EIGHTH AMENDMENT VIOLATION AGAINST DEFENDANTS MATTHEWS, COLTON, HAMULA, AND WOOLFOLK FOR EXCESSIVE USE OF FORCE**

As noted above, Plaintiff alleges that Defendants Matthews, Colton, Hamula, and Woolfolk subjected him to cruel and unusual punishment arising from excessive use of force. In particular, Plaintiff alleges that on May 10, 2007, Defendants Matthews, Hamula, and Colton came to Plaintiff's cell to handcuff him and escort him to a "special controls strip cell" for threatening staff members. Then, Defendant Hamula allegedly placed a spit mask over Plaintiff's face and roughly escorted Plaintiff to a secluded strip search area, where Defendants Matthews, Hamula, and Colton stripped Plaintiff naked

and placed him into restraints, all of which Defendant Woolfolk allegedly filmed.  Next, Defendants Hamula and Colton allegedly slammed Plaintiff to the floor, applied pressure to Plaintiff's wrists to the point of breaking them, and pushed Plaintiff's thumb under his left ear lobe with great force.  ("May 10 Assault") (Doc. # 33 at 2-3.)  Plaintiff asserts that Defendants Matthews, Hamula, and Colton subjected him to such pain over the course of two hours and forty minutes.  Plaintiff further asserts that Defendant Woolfolk failed to intervene during the aforementioned assault.

As with Plaintiff's Claim 1, Defendants assert that Plaintiff has failed to exhaust his administrative remedies in connection with his allegations against Defendants Matthews, Hamula, Colton, and Woolfolk in Claim 7.  (Doc. # 329 at 4-5.)  The grievances Defendants provided to the Court support this assertion.

On April 9, 2007, nearly one month **before** Plaintiff was purportedly assaulted by Defendants Matthews, Hamula, and Colton and, which attack was purportedly witnessed by Defendants Woolfolk, Plaintiff filed a Step 1 grievance (Grievance No. CS06/07-912) against various corrections officers.  (Doc. # 329-3 at 1.)  In pertinent part, Plaintiff asserted that Defendant Matthews threatened to paralyze Plaintiff if he continued to file grievances about his breakfasts and lunches.  (*Id.*)  Obviously, the Step 1 grievance made no mention of the May 10 Assault, which is the basis of Plaintiff's Claim 7 and which would occur a month later.  However, Plaintiff complained of the May 10 Assault in a Step 2 grievance, which he filed on May 30, 2007, and which identified only Defendants Matthews, Hamula, three other officers who are no longer part of this

action,[3] and "several other officers" as the perpetrators. (Doc. # 329-3 at 2.) Plaintiff's complaint of the purported May 10 Assault in a Step 2 grievance, rather than filing a Step 1 grievance, does not satisfy the DOC's grievance procedures, which clearly state that a substantive issue may not be added at a later step if it has not been contained in each previous step of that particular grievance. (*See* AR 850-4-IV-E (2) at Doc. # 329-6 at 4.)

On July 19, 2007, Plaintiff made a second failed attempt to exhaust his administrative remedies in connection with the purported May 10 Assault by untimely filing Grievance No. CS07/08-054 ("July 19, 2007 Grievance"). (Doc. # 329-5 at 1.) In that grievance, in pertinent part, Plaintiff complained of Defendants Matthews, Colton, Hamula, and Woolfolk's failure to "stop the unnecessary infliction of pain" on May 10, 2007. Despite the fact that Plaintiff's grievance relating to the May 10 Assault more than two months after it purportedly occurred was untimely, his grievance was denied for "failure to provide any dates or times of these alleged incidents." (*Id.*) On August 15, 2007, Plaintiff filed a Step 2 grievance in connection with the May 10 Assault, but in his description of the events, he made no mention of Defendants Colton, Hamula, and Woolfolk. (Doc. # 329-5 at 2.) On September 6, 2007, Plaintiff's Step 2 grievance was denied because, according to the responding DOC employee, the use of force was

---

[3] The three officers are Warden Reid, who was dismissed from this case on September 22, 2006 (Doc. # 16), and Corrections Officer Gallagher and Captain Miklich, who were dismissed from this case on September 17, 2009 (Doc. # 219).

justified in light of Plaintiff's "assault on Lt. Matthews," attempt "to spit on other staff and kick at them," and refusal to "move when asked." (*Id.*)

In their additional briefing, Defendants now assert that the July 19, 2007 Grievance is untimely because "it does not comport with the 30 day requirement set forth in Administrative Regulation 850-04-IV-I-1." However, because Defendants did not refer to the untimeliness as a basis for denying Plaintiff's grievance, the Court questions whether Defendants waived their right to assert untimeliness. In any event, regardless of whether Defendants waived their right to argue that Plaintiff's grievance was untimely, the Court finds that Plaintiff failed to exhaust his administrative remedies because he never filed a Step 3 grievance. (*See* Doc. # 392-5.)

The Court has considered Plaintiff's Reply to Order to Show Cause, in which Plaintiff attempts to justify his failure to exhaust his administrative remedies with respect to the purported May 10 Assault. (Doc. # 331.) Plaintiff asserts that his failure to exhaust should be excused because of threats of harm by prison officials, prison officials have destroyed or confiscated his grievances, or his grievances got lost in prison mail. (Doc. # 331 at 2-3.) However, these assertions are vague and unsupported. Moreover, the number of grievances filed by Plaintiff discredit his assertions that the alleged harassment served to chill his exercise of his grievance rights.[4] Therefore, the Court finds that dismissal without prejudice of Plaintiff's seventh

---

[4] Additionally, Plaintiff's ability to file this lawsuit, as well as at least four others in this Court within the past two years, renders clear that any threats of harm have not chilled Plaintiff. *See* Case Nos. 09-cv-02207, 10-cv-02050, 11-cv-00169, and 11-cv-01443. In addition to the four aforementioned cases, Court records reveal that Plaintiff has managed to file a total of

claim for relief is warranted. *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("a dismissal based on a failure to exhaust administrative remedies should be without prejudice") (emphasis omitted).

## C.   ADDITIONAL CONDUCT

As previously noted, the Second Amended Final Pretrial Order (Doc. #321) identifies additional conduct as the basis for Plaintiff's Claims 1 and 7. Having reviewed the substance of the allegations with respect to those claims, the Court finds that the alleged conduct fails to support actionable claims for Eighth Amendment violations and, therefore, dismissal is warranted pursuant to 28 U.S.C. § 1915 and Rule 12(b)(6). The Court will address the asserted conduct, in turn, below.

    1.    <u>Filing "False" Disciplinary Reports (Claim 1 against Defendants Mora and Olivett and Claim 7 against Defendants Matthews, Hamula, Colton and Woolfolk)</u>

In his Complaint and the Second Amended Final Pretrial Order, Plaintiff alleges that Defendants Mora and Olivett "fil[ed] numerous false C.O.P.D. disciplinary reports to restrict all his TV, phone and canteen privileges, and abolish all prospects of parole." (Doc. # 321 at 2; *see also* Doc. # 3 at 22 ("When Plaintiff lashes out they file COPD violations or bogus and trumped up violations.")). Also in the Second Amended Final Pretrial Order, Plaintiff accuses Defendants Matthews, Hamula, Colton and Woolfolk of also filing false disciplinary reports against him. (Doc. # 321 at 2.)

---

seven other cases against prison officials since 1990. (*See* Case Nos. 90-cv-00018, 91-cv-01580, 93-cv-01950, 96-cv-00107, 99-cv-01573, 02-cv-01796, and 08-cv-01992.)

Although the Court has scoured Plaintiff's long-winded and difficult-to-discern allegations, it was unable to locate any substantiated assertions against Defendants Mora, Olivett, Matthews, Hamula, Colton, and/or Woolfolk for filing false disciplinary reports. Even if Plaintiff had properly alleged such conduct, "prisoners have no constitutional protections for being falsely or wrongly accused of conduct which may result in the deprivation of certain liberty interests provided that the prisoner is afforded due process." *Cooper v. Belcher*, No. 08-cv-01599, 2010 WL 3359709, at *20 (D. Colo. Aug. 25, 2010) (unpublished) (citing *Wolff v. McDonnell*, 418 U.S. 539, 571 (1974); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). Further, "an 'inmate must allege more than his *personal belief* that he is the victim of retaliation.'" *Id.* (quoting *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (emphasis added)). In the instant case, Plaintiff has not alleged that he was denied due process. Plaintiff has also not asserted anything more than a personal belief that he has been retaliated. Accordingly, Plaintiff's first and seventh claims of relief are also dismissed with prejudice to the extent they are premised on Defendants' purported filing of false disciplinary reports.

   2.   <u>Destroying and Confiscating Personal Legal Property to Hinder Access to the Court (Claim 1 against Defendants Mora and Olivett)</u>

In the Second Amended Final Pretrial Order, Plaintiff also alleges that "Defendants Mora and Olivett destroyed and confiscated Plaintiffs personal and legal property to hinder his access to the court." (Doc. # 321 at 2.) Once again, the Court was unable to find in the Complaint or supplements thereto assertions that Defendants Mora and Olivett confiscated his legal property. In any event, while destruction of legal

17

documents can give rise to a constitutional claim, vague, unsupported, and speculative allegations, such as in the instant case, are insufficient. *See Cooper*, 2010 WL 3359709, at *19. Finally, even if Defendants Mora and Olivett did destroy and confiscate legal property, Plaintiff fails to allege that he was actually injured. Further, Plaintiff's prolific court filings demonstrate that Plaintiff's court access was not hindered and undermine any allegations of injury. *See id.* at *18-19. Accordingly, dismissal with prejudice of Plaintiff's first claim is also warranted to the extent that it is premised on Defendants' purported destruction and confiscation of personal legal property.

    3.    <u>Denying Plaintiff Medical Attention By Dr. Craney (Claim 7 against Defendants Matthews, Hamula, Colton, and Woolfolk)</u>

Finally, in the Second Amended Final Pretrial Order, but nowhere in the Complaint or its supplements, Plaintiff asserts that, after "assaulting" him on May 10, 2007, Defendants Matthews, Hamula, Colton, and Woolfolk denied him medical attention by Dr. Craney. (Doc. # 321 at 2.)

While it is well-established that denial of medical treatment can give rise to an actionable Eighth Amendment claim, such denial must amount to a "deliberate indifference to serious medical needs" of a prisoner. *See Mallory v. Jones*, No. 10-cv-02564, 2011 WL 1750234, at *4 (D. Colo. May 3, 2011) (unpublished) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-05 (1976)). An Eighth Amendment claim for deliberate indifference involves a "two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). With respect to the objective component, a medical need is serious if it is 'one that has been

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quotation and citation omitted). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of her condition." *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005). "[P]rison officials who 'actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994)).

In the instant case, Plaintiff has not identified the nature of the injuries and has not alleged that he was denied any kind of medical attention whatsoever. Moreover, in failing to assert a denial of medical care claim in the Complaint or its supplements, Plaintiff has denied Defendants the opportunity to respond to these allegations. Accordingly, the Court finds that dismissal without prejudice of Plaintiff's seventh claim is warranted to the extent it is premised upon a purported denial of medical treatment by Defendants Matthews, Hamula, Colton, and Woolfolk.

## IV. **CONCLUSION**

Accordingly, IT IS ORDERED THAT:

(1)  The following claims are DISMISSED WITH PREJUDICE:

- Claim 1 in its entirety; and

- Claim 7 to the extent it is premised on Defendants Matthews, Hamula, Colton, and Woolfolk's purported filing of false disciplinary reports;

(2)  The following claim is DISMISSED WITHOUT PREJUDICE:

- Claim 7 to the extent it is premised on Defendants Matthews, Hamula, Colton, and Woolfolk's alleged assault of Plaintiff on May 10, 2007 and/or Defendants Matthews, Hamula, Colton, and Woolfolk's purported denial of access to medical treatment by Dr. Craney; and

(3)  The three-day jury trial is set to commence on September 6, 2011 is VACATED;

(4)  This case is DISMISSED; and

(5)  Plaintiff's Motion to Amend Final Pretrial Order (Doc. # 332) and Plaintiff's Request for Review of: Trial Material, and Request for Subpoena (Doc. # 336) are DENIED AS MOOT.

DATED:  August  22 , 2011

BY THE COURT:

*Christine M Arguello*
_____
CHRISTINE M. ARGUELLO
United States District Judge